Village of Carthage, Respondent, *v.* Central New York Telephone and Telegraph Company, Appellant.

1. Municipal Corporations — Power to Compel Telegraph and Telephone Companies to Place Wires Underground — Village of Carthage. While it is competent for the state to delegate its sovereign powers to cities and villages in regard to the construction, maintenance and control of telegraph and telephone corporations, such surrender of sovereignty cannot be implied, but must rest upon express legislation containing a clear and unqualified grant of power; in the absence, therefore, of express legislative authority, the village of Carthage has no power to compel a telephone company to place the extension of its existing lines in the streets of the village in underground conduits.

2. Authority to Erect Telegraph and Telephone Poles Not Conferred by Village Law — Villages Have Power of Regulation Only. Nor is such authority conferred by the Village Law (L. 1897, ch. 414, § 89, subd. 9); the right of such companies to erect poles and

string wires is conferred by the state through the Transportation Corporations Law (L. 1890, ch. 566, art. 8, § 102), not by village authorities, who are permitted to regulate their erection only; that is to say, the location of the poles and the streets to be occupied.

*Village of Carthage* v. *Central N. Y. Tel. & Tel. Co.*, 110 App. Div. 625, reversed.

(Argued June 5, 1906; decided June 19, 1906.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 24, 1906, which reversed an order of Special Term vacating a temporary injunction.

The nature of the action, the facts, so far as material, and the question certified are stated in the opinion.

*Frederick G. Fincke* and *W. B. Van Allen* for appellant. The state of New York has granted directly to the defendant the right to erect and maintain its poles and wires in the streets of Carthage. The consent of the village authorities is unnecessary. (*Barhite* v. *H. T. Co.*, 50 App. Div. 25; *City of Rochester* v. *B. T. Co.*, 52 App. Div. 6; *N. U. T. Co.* v. *Marsh*, 96 App. Div. 122; *Osborne* v. *A. T. Co.*, 97 N. Y. Supp. 874; *Chamberlain* v. *I. T. Co.*, 119 Iowa, 619; *N. T. E. Co.* v. *Minneapolis*, 81 Minn. 140; *City of Duluth* v. *D. Tel. Co.*, 84 Minn. 486; *Abbott* v. *City of Duluth*, 104 Fed. Repr. 833; *M. Tel. Co.* v. *City of Benton Harbor*, 121 Mich. 512; *W. Tel. Co.* v. *City of Oshkosh*, 62 Wis. 32.) The state of New York, having granted to the defendant the right to place its poles and wires in the streets of Carthage, has never delegated to the village the power to take away such right; consequently the village cannot take it away and compel the defendant to place its wires underground. (Dillon on Mun. Corp. §§ 89, 91; *State ex rel. R. M. B. T. Co.* v. *City of Red Lodge*, 30 Mont. 338; *M. T. Co.* v. *Benton Harbor*, 121 Mich. 512; *W. T. Co.* v. *Oshkosh*, 62 Wis. 32; *City of Rochester* v. *B. T. Co.*, 52 App. Div. 6.)

*A. E. Kilby* for respondent. The village had power to restrict defendant to underground extension. (*A. R. Tel.*
29

*Co.* v. *Hess*, 125 N. Y. 641; *People* v. *Squires*, 107 N. Y. 593; *City of Rochester* v. *B. T. Co.*, 64 N. Y. Supp. 804; *Lottery Case*, 188 U. S. 321; *Ex parte Siebold*, 100 U. S. 371; *Matter of Debs*, 158 U. S. 564; *Canfield* v. *U. S.*, 167 U. S. 324.)

EDWARD T. BARTLETT, J.   This appeal is taken by permission of the Appellate Division and the following question certified : " Has the plaintiff, the Village of Carthage, the right and power to require and compel the defendant, the Central New York Telephone and Telegraph Company, to place the extension of its existing lines in the streets of said village in underground conduits ? "

A few only of the facts appearing by the affidavits in this case are material to a solution of the single question submitted for answer.   It appears that the defendant company had for some years prior to the 1st day of January, 1905, operated a telephone system in the village of Carthage.   On or about that date the defendant company made application to the board of trustees of the plaintiff for permission to extend its telephone lines in said village.   After due consideration the board passed the following resolution : "*Resolved,* That the said telephone company be allowed to maintain an exchange in said village by means of conduits under the streets only, the location of which is to be under the direction of this board.   And it is further resolved, that no more poles be erected by said company in said streets and that such company be required to remove all its poles erected since January 1st, 1905."   The defendant was served with notice of this resolution, but continued to erect poles and string wires notwithstanding.

Thereupon the village commenced this action in equity, praying for a permanent injunction enjoining the defendant from erecting any more poles in the streets and compelling the removal of those it had erected since January 1st, 1905, after knowledge of the foregoing resolution of the board of trustees.   A temporary injunction was granted by the county

judge of Jefferson county, enjoining the defendant as prayed. The defendant moved to vacate the temporary injunction, which motion was granted.

The learned judge at Special Term rested his decision, according to his opinion, on the lack of power in the village to compel the defendant to place the wires of its proposed extended line underground; also that "when the Village of Carthage assumes to require one telephone company to place its wires underground in the same streets in which another is permitted to use poles and open air construction, it does an act which cannot be justified, even assuming the matter is within its jurisdiction." On appeal by the village to the Appellate Division the order vacating the temporary injunction was reversed, with a divided court, Mr. Justice Nash writing the dissenting opinion, McLennan, P. J., concurring.

We agree with the conclusion of the dissenting opinion that it is preferable to dispose of the matter upon the question of right rather than that of an illegal discrimination between the two competing companies operating existing plants in the same streets of the plaintiff village.

The question of law certified to this court as to whether the village has the power to compel the defendant to place the extension of its existing lines in the streets in underground conduits is to be determined by the present state of legislation bearing upon the subject. It has long been the settled law of this state that telegraph and telephone companies derive the right to erect their poles and string their wires directly from the state. The Transportation Corporations Law, art. VIII, headed "telegraph and telephone corporations," section 102, reads in part as follows: "Construction of lines. Such corporation may erect, construct and maintain the necessary fixtures for its lines *upon, over* or *under* any of the public roads, streets and highways;" etc.

Our attention is called to certain general provisions of the charter of the village of Carthage, which do not in terms refer to the subject under consideration, from which it is argued that it can be implied that the legislature has dele-

gated to the village the power to compel telegraph and tele-phone companies to place their wires underground. We are of opinion that, while it is competent for the state to delegate its sovereign power to cities and villages in regard to the con-struction, management and control of these companies, such surrender of sovereignty cannot be implied, but must rest on express legislation containing a clear and unqualified grant of power.

It is further argued on behalf of the plaintiff village that the Village Law (§ 89, subd. 9) is to be construed as confer-ring the power in question. It reads as follows: " Poles and wires. To regulate the erection of telegraph, telephone or electric light poles, or the stringing of wires, in, over or upon the streets or public grounds, or upon, over or in front of any building or buildings." It is to be observed that the legisla-ture when conferring upon these companies in the Transpor-tation Corporations Law the authority to construct and main-tain the necessary fixtures for their lines, used the words " upon, over or under" any of the public roads, etc., while in the Village Law the language is " in, over or upon" the streets, etc. This discrimination in the use of language is consistent with the language of the section relied upon from the Transportation Corporations Law (§ 102). The legislature having granted these corporations the right to construct and maintain their lines upon, over or under any public roads, streets and highways, it sought to confer upon the boards of trustees of villages the power to *regulate* the *erection* of tele-graph, telephone or electric light poles, or the *stringing of wires*, in, over or upon the streets, etc. It is clear that the intention of the legislature was to permit villages to regu-late the erection of telegraph, telephone or electric light poles and the stringing of wires on these poles. The right to erect these poles and string the wires is not derived from the village authorities, but they are permitted to regulate the erection of the same; that is to say, the location of the poles and the streets to be occupied are, doubtless, within the reasonable power of the village to regulate.

It is apparent that if the state should see fit to surrender its sovereignty in the premises and permit each municipality, through which a telegraph or telephone line passes, to determine whether wires should be strung upon poles or placed in conduits according to the varying judgments of the different local boards, it would work a great and radical change in the right of companies to construct and maintain their plants.

As the law now stands the company is at liberty to decide whether it will go on, over or under a street, subject to the right of the state to revoke its license. Opinions may differ as to which policy should prevail in view of the rapid increase of telephone companies and the disfigurement of streets by the erection of a large number of poles, each company placing its own; be this as it may, it is clear that no such power as is claimed by the respondent is at present vested in the villages of the state.

The order appealed from should be reversed, with costs in this court, and the order of the Special Term vacating the temporary injunction affirmed.

Question certified answered in the negative.

CULLEN, Ch. J., GRAY, O'BRIEN, HISCOCK and CHASE, JJ., concur; WERNER, J., not voting.

Ordered accordingly.