Jacob Abk, J.
This is an action for a declaratory judgment. The plaintiff, People’s Cable Corporation (herein People’s) and defendant, Cable Television of Rochester, Inc. (herein Cable), were organized pursuant to section 3 of the Transportation Corporations Law to operate a community antenna television (CATV) system.
The plaintiff and others, not parties to this action, applied to the defendant City of Rochester (herein city), for the right to conduct a CATV system within the city. Their applications were denied when the City Council adopted an ordinance (No. 69-597) on December 30, 1969 that granted this right to the defendant Cable.
The ordinance was introduced in the City Council on March 26, 1968 and was referred to the Law and Public Utility Committee. It remained there until after the political control of the Council changed as a result of the November, 1969 election when it was brought out of committee at a council meeting held on December 9, 1969. This session was adjourned to December 15, *765 1969 for the purpose of conducting a public hearing to allow applicants who sought to operate a CATV system to present their views.
On December 10, 1969 the Mayor of the City of Rochester advised the plaintiff that the City Council would hold a public hearing on applications for the operation of a CATV system on December 15, 1969, and forwarded to the plaintiff a draft ordinance and information sheet upon which all applications would be evaluated in terms of the criteria contained therein. On December 15, 1969 the plaintiff submitted a proposal. There is no dispute that the plaintiff met the requisites for applicants. The plaintiff agreed to pay the city annually a fee of 5% of the gross revenue with a minimum of $10,000 and paid a required nonrefundable filing fee of $500. This fee was accepted by the city, but returned to the plaintiff after this action was commenced on January 15, 1970.
Ordinance No. 69-597 adopted by the Council on December 30, 1969 states that it granted a nonexclusive license to the defendant Cable for the “ right and privilege to construct, erect, operate and maintain, in, upon, along, across, above, over and under the streets, alleys, public ways and public places now laid out or dedicated, and all extensions thereof and additions thereto, in the City, poles, wires, cables, underground conduits, manholes, and other television conductors and fixtures necessary for the maintenance and operation in the City of a CATV system for the interception, sale and distribution of television and radio signals.”
The ordinance provides that the defendant Cable was to pay the city annually an amount equal to 4% of the gross receipts up to and including the amount received from 40,000 subscribers and 5% of the operating gross receipts over 40,000 for the use of the streets and other facilities of the city.
The City Council consisted of 9 members, 5 of whom voted for the ordinance, 2 against it and 2 abstained from voting. On January 6, 1970 defendant Cable accepted the conditions set forth in the ordinance, as-provided by section 23 thereof, and stated that it would pay an additional 1% of the gross revenue or $10,000, whichever was greater, and after 10 years it would consent to renegotiate payments to be made to the city. The defendant Cable has strung its own wires in the city on poles leased from public utility companies. The only other proposal received in evidence was submitted by the Monroe Cablevision, Inc., which company was acquired by -the plaintiff in January, 1971. It offered a smaller sum to the city than the plaintiff and defendant Cable.
*766 The plaintiff seeks to annul this ordinance on the ground that the city granted a franchise to defendant Cable in violation of section 5-24 of the City Charter that provides for the granting of franchises. The defendants maintain that since defendant Cable is a corporation organized under the Transportation Corporations Law, by virtue of section 27 of that statute it has a franchise to “ erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways ’ ’, provided that it shall ‘ ‘ first obtain from the common council * * * permission to use the streets within such city”. They state that the ordinance and the defendant Cable’s acceptance of its terms and conditions gave defendant Cable the legal right to operate a CATV system in the City of Rochester, as the ordinance is the required permission under the statute.
Two provisions of the City Charter are involved in this case: Section 5-23 sets forth further legislative powers of the City Council to adopt ordinances, and by subdivision C thereof provides : “To gTant all rights or franchises to use the streets, highways and public places or any part thereof or the space above or underneath them, for any purpose whatever, upon such ■terms and conditions as it deems proper.
“All franchises or rights to use the streets, highways and public places, acquired by any corporation and not exercised, in whole or in part, which are repealable, are hereby repealed and made subject to the provisions of subdivision C of this section. All franchises and charters of corporations hereafter granted shall be taken subject to subdivision C of this section.” (Section 20 of the General City Law grants specific powers to cities and subdivision 10 thereof provides: “To grant franchises or rights to use the streets, waters, water front, public ways and public places of .the city.”)
Section 5-24 of the City Charter provides for the granting of franchises and states in part: “An ordinance authorizing any franchise must be passed by a vote of three-fourths of all the members of the council and must provide for a disposition of the same at public auction to the highest bidder, under proper regulations for the protection of the city and after public notice to be published once each week for three weeks in the official papers.”
(Paragraph b of subdivision 2 of section 23 of the General City Law contains similar provisions for the granting of franchises.)
A corporation is formed under section 3 of the Transportation Corporations Law by filing a certificate of incorporation *767 with the Department of State pursuant to article 4 of the Business Corporation Law. It receives its corporate franchise in the same perfunctory manner as any business corporation. However, under section 27 of the Transportation Corporations Law a corporation is given certain powers, and involved in this lawsuit is whether the provision that requires the permission of the common council of a city, which is a prerequisite to the use of the streets for its equipment and lines, constitutes a franchise.
The right to exist as a corporation and the privilege of using public streets for its equipment and lines are both called franchises, but each grants a different privilege.
Bankers Trust Co. v. City of Yonkers (255 App. Div. 173,178, affd. 280 N. Y. 738 [1939]) was concerned with a city ordinance that revoked franchises to operate street car lines. The court said: “ In considering the issue so presented, there should be noted the difference between the right to operate a railroad under its articles of incorporation, called a franchise, and the consent of a municipality required under the State Constitution (Art. 3, § 18), which is also generally called a franchise (secondary franchise, Village of Stillwater v. Hudson Valley R. Co., 255 N. Y. 144).”
In Village of Stillwater v. Hudson Val. Ry. Co., (supra, pp. 1501-151), the court held: “ The secondary franchise, which in these cases is the consent or permission given by local authorities for the use of its streets or highways, is not the franchise by and under which the corporation exists and has the right to function as a corporate being.”
In New York Cent. & Hudson Riv. R. R. Co. v. City of New York (202 N. Y. 212, 218 [1911]) the court made a distinction between the duration of the franchise of a railroad’s right to occupy the streets and the limitation that applied to its corporate existence.
The consent of the municipality to use its streets has a long legislative history. The courts have recognized that this permission constitutes a franchise that must be granted on the local level.
In Ghee v. Northern Union Gas Co. (158 N. Y. 510 [1899]), the question was whether under the Charter of the City of New York the “ municipal authorities ”, whose consent was required to lay conductors for conducting gas through the streets of the City of New York under the Transportation Corporations Law, was the head of a department or the common council. The court said (p. 513) “It is true that the franchise comes from *768 the state, hut the act of the local authorities, who represent the state by its permission and for that purpose, constitutes the act upon which the law operates to create the franchise. The state might grant the franchise directly to the corporation without the consent of the local authorities, and has done so in many instances; but the tendency of later years, which is well grounded in reason, is for the state to confer upon the local municipal authorities the right to represent it in the matter of granting franchises to the extent that the final act necessary to the creation of franchises must be exercised by such authorities. The legal effect of the consent, therefore, is the same as if the local authorities in form granted the franchise and the interest in the land.”
In People ex rel. Metropolitan St. Ry. Co. v. State Bd. of Tax Comrs. (174 N. Y. 417, 435-436 [1903]) the court held: “ The general franchise of a corporation is its right to live and do business by the exercise of the corporate powers granted by the state. The general franchise of a street railroad company, for instance, is the special privilege conferred by the state upon a certain number of persons known as the corporators to become a street railroad corporation and to construct and operate a street railroad upon certain conditions. Such a franchise, however, gives the corporation no right to do anything in the public highways without special authority from the state, or some municipal officer or body acting under its authority. When a right of way over a public street is granted to such a corporation, with leave to construct and operate a street railroad thereon, the privilege is known as a special franchise, or the right to do something in the public highway, which, except for the grant, would be a trespass.”
Beekman v. Third Ave. R. R. Co. (153 N. Y. 144 [1897]) involved the validity of the sale of a franchise at public auction which grouped together several branches or extensions of a street railroad. In setting aside the sale, the court held that the statute seemed to contemplate the sale of a franchise for a single branch or extension and not several branches or extensions grouped together. “ But perhaps the weightiest reason for this view is to be found in the fact that a sale of the franchise for several branches or extensions of an existing railroad at one time and under one bid, would defeat the general purpose of the statute and enable the common council in most cases practically to select the purchaser of the right.” (p. 154).
The significance of this authority is that the granting of the franchise was within the power of the Common Council, and, *769 more importantly, the defendant city undisputedly selected the defendant Cable as the purchaser. The court said: “ It is a statute conferring power upon local authorities and regulating the procedure for the disposition of public franchises, and, even if open to two constructions, that must be preferred which best safeguards the public interests, conduces to the harmonious operation of all its parts, and promotes purity and simplicity of administration.” (p. 160).
If this ease were one of first impression, the nature of the permission by the local authorities under section 27 of the Transportation Corporations Law would require a construction that it came within the franchise provisions of the City Charter to safeguard the public interest, rather than an interpretation that the provision was a mere license, as urged by the defendants.
The case at bar illustrates the importance of statutes such as section 5-24 of the City Charter and paragraph b of subdivision 2 of section 23 of the General City Law for the disposition of franchises. This plaintiff met all the standards required of an applicant, yet, was denied the right to operate a CATV system that was granted to another for a lesser sum, although the latter voluntarily increased the consideration to approximate the plaintiff’s offer only after the ordinance was adopted.
The parties are in agreement that the Public Service Commission has not assumed regulation over community antenna television companies. The Legislature by section 2 of chapter 419 of the Laws of 1971 (eff. 'June 17, 1971) added section 88 to the General Municipal Law which is devoted exclusively to CATV franchises. It placed a moratorium on the issuance of franchises for any CATV system by a municipality for a period of one year from the effective date of the enactment. Subdivision 1 sets forth the meaning of the various terms used in the section, and paragraph (d) thereof defines “ Franchise ” as “ Any authorization, permit, license or privilege granted by a municipal corporation to construct, operate, maintain or manage a catv system in the state.”
The legislative findings (section 1 of chapter 419) upon which section 88 was based repeatedly refers to the award of franchises to operate CATV systems by municipal corporations. The Legislature found that “there has been intense competition for franchises from municipal corporations to operate catv systems ” (subd. [b]) and that this “ industry offers a tremendous potential for municipal corporations to receive substantial amounts of revenue through the granting of catv franchises in return for franchise fees.” (subd. [c]).
*770 In Matter of Chatlos v. McGoldrick (302 N. Y. 380, 388) the court held that the Legislature cannot control the interpretation of a law it passed earlier. ‘ ‘ However, we held, almost a century ago, that, when the Legislature does tell us what it meant by a previous act, its subsequent statement of earlier intent is entitled to very great weight (see People ex rel. Mut. Life Ins. Co. v. Board of Supervisors, 16 N. Y. 424, 435, 436).”
Defendants lean very heavily upon the case of Harper v. City of Kingston (17 Misc 2d 627 [1959]) which held that the provisions of section 27 of the Transportation Corporations Law created the franchise and that permission of the common council was a limitation on it that was removed by the adoption of an ordinance in the exercise of its police power.
The court stated that since paragraph b of subdivision 2 of section 23 of the General City Law made no reference to the language “ rights to use the streets ” as contained in subdivision 10 of section 20 of the General City Law, it was intended that such use would not require public auction on public notice. The fact that subdivision 10 of section 20 of the General City Law empowers cities to grant franchises or rights to use the streets does not restrict franchises to the use of streets under that statute. “ Use of the conjunction ‘ or ’ in a statute usually indicates that the language is to be construed in an alternative sense.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 235.)
The term ‘1 franchise ” under both subdivision 10 of section 20 and paragraph b of subdivision 2 of section 23 of the General City Law applies to franchises generally and includes the use of the streets. Many rights are granted by ordinances to use the streets of the City of Rochester that are not franchises. Some of these are contained in the Code of the City of Rochester: Cartmen (ch. 42), Hucksters Commercial Travelers etc. (ch. 62), Ice Dealers (ch. 64), Motorbuses (ch. 72), Newsstands (ch. 74), Taxicabs (ch. 108).
In Harper (17 Misc 2d 627, supra) the court places reliance on the Village of Carthage v. Central N. Y. Tel. & Tel. Co. (185 N. Y. 448, 452 [1906]) where it was held that the right to erect poles and string wires was not derived from the village authorities who were merely permitted to regulate the location of poles and the streets to be occupied by them, as the right of telegraph and telephone compaines to erect poles and string their wires came directly from the State. The court overlooked the fact the Village of Carthage case no longer stood for the principle it enunciated. In New York Tel. Co. v. Board of Educ. of *771 City of Elmira (270 N. Y. 111, 118-119 [1936]) .the court said: “ It [plaintiff] relies upon the case of Village of Carthage v. Central N. Y. Tel. Co. (185 N. Y. 448), which held that a village could not force a telephone company to place its wires in conduits instead of on poles on the ground that section 102 of the Transportation Corporations Law (Laws of 1890, ch. 566, art. 8, § 102) [*] gave telephone companies full power to place lines upon, over or under public roads and streets. Three years after the Carthage case, however, the Appellate Division in the first department reached a contrary result in Matter of N. Y. Independent Tel. Co. (133 App. Div. 635). [1909] Mr. Justice Clabke writing the opinion pointed out that in the Carthage case a statute requiring telephone companies seeking to lay wires under ground in any city, village or town to obtain the permission of the Comon Council of the city, etc., was not brought to the attention of the court. This court affirmed the judgment of the Appellate Division on the opinion of Clarke, J. (200 N. Y. 527).” The courts of other States have passed upon the issue before this court. These authorities are consonant with the law of this State. In Kornegay v. City of Raleigh (269 N. C. 155), .the City of Raleigh adopted an ordinance which gave a company the right to construct a community antenna television system with citywide poles, cables and wires over the streets. In sustaining the sufficiency of a complaint that attacked the validity of the ordinance, the court (pp. 161, 162) said: “ The grant by a city to a person, firm or corporation of the right to construct a citywide system of towers, poles, cables, wires, and other apparatus in, along and over its streets and other public ways and to operate such systems for the profit of the grantee is clearly a franchise, for it is the grant of a right not held by all persons in common and which may be granted only by the act of the sovereign or its authorized agent. * # * A franchise need not be exclusive. ’ ’ [This follows the definition of a “ franchise ’’ in Madden v. Queens County Jockey Club 296 N. Y. 249, 255 (1947).] * * *
*772 “ We conclude that the rights which the city attempted to grant to Southeastern constitute a franchise, notwithstanding the fact that the ordinance denominates them a ‘ license The grant is, therefore, void because the procedure required by § 18 of the city charter for the granting of a franchise has not been followed. ’ ’
In Aberdeen Cable TV Serv. v. City of Aberdeen (85 S. D. 57, cert. den. 400 U. S. 991) the court held that an ordinance granting the plaintiff a nonexclusive right to operate a community antenna television system in the City of Aberdeen was invalid, as it did not comply with the procedure adopted for the granting of a franchise.
The defendants urge that section 27 of the Transportation Corporations Law is general legislation affecting the State as a whole and followed the enactment of the Rochester City Charter. It would, therefore, have the effect of limiting any provision of the charter to the extent that it was inconsistent with the general statute.
There is no contradiction between these two enactments. In any event, a general statute does not repeal a special statute “ unless the intent to repeal it is manifest, although the terms of the general act are broad enough to include the cases embraced in the special law”. (Grimmer v. Tenement House Dept., 204 N. Y. 370, 378 [1912]. McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 396.) Moreover, subdivision c of section 5-23 of the City Charter provides: 1 ‘ All franchises and charters of corporations hereafter granted shall be taken subject to subdivision c of this section. ’ ’
The defendants seek a dismissal of the complaint on the ground that the plaintiff has no standing to bring this action. The plaintiff relies upon Dunn & Bradstreet v. City of New York (276 N. Y. 198, 206 [1937]) where the court, in reversing the Appellate Division and affirming Special Term, which denied a motion to dismiss the complaint in a declaratory judgment action that involved a local law, held that the remedy of a declaratory judgment ‘1 is applicable in cases where a constitutional question is involved or the legality or meaning of a statute is in question and no question of fact is involved. In such cases, pure questions of law are presented.” The decision in the case at bar is based upon undisputed facts.
The plaintiff also contends that this action was timely commenced to institute an article 78 proceeding and cites CPLR 103 (subd. [c]) that provides: “ If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed *773 solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution. ’ ’
Matter of Mastrangelo v. State Council of Parks (22 A D 2d 947) (appeal withdrawn, 16 N Y 2d 544) was an article 78 proceeding against the State and City of New York in which Special Term dismissed the petition as insufficient in law against the respondent officials and agencies of the City of New York. In reinstating the petition, the court held: ‘ ‘ The action of the City Council, even though it discharged a legislative function under authority delegated by the Legislature, is not immune from judicial review, if it has acted in excess of its authority or has not proceeded in the manner authorized by law” (citing authorities).
In Rock Hill Sewerage Disposal Corp. v. Town of Thompson (27 A D 2d 626 [1966]) the court held that an “ Article 78 is not the only means available for the review of the constitutionality of governmental action. Declaratory judgment constitutes an alternative remedy. (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7801.02, subd. [4] ; see, also, Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508.) ”
The court in Matter of Mandis v. Gorski (24 A D 2d 181) cited CPLR 103 (subd. [c]) when it considered an article 78 proceeding as an action for a declaratory judgment. Conversely, an action for a declaratory judgment in a proper case, can be regarded as an article 78 proceeding.
City of New York v. Comtel, Inc. (57 Misc 2d 585, affd. 30 A D 2d 1049, affd. 25 N Y 2d 922 [1969]) was concerned with the right of the defendant CATV company to operate its system without obtaining a franchise or consent for the use of the streets of New York City. The charter provided that the Board of Estimate had the power on behalf of the city to grant ‘ ‘ franchises or rights ” involving the occupation or use of any of the streets of the city. Trial term held that the transmission of signals by means of the cables of the New York Telephone Company did not come within the provisions of the New York City Charter which contemplated the exercise of the franchise power only with respect to the physical use and occupation of the streets and not the passage of television signals by means of the telephone company cables.
The court stated that an indication that the franchise power vested in the Board of Estimate was limited to the physical use or occupation of the streets, above or below the surface, referred to subdivision 17 of section 102 of the Real Property Tax Law and said: “Under this provision, the franchise is defined as a *774 ‘ right, authority or permission to construct, maintain or operate in, under, above, upon or through any public street, highway, water or other public place mains, pipes, tanks, conduits, wires or transformers, with their appurtenances, for conducting water, steam, light, power, electricity, gas or other substance.’” (pp. 593-594).
While Gomtel, by reason of a different factual situation, may not be fully an authority upon the issue before this court, some of the views expressed in that case do tend to confirm the conclusión reached here.
The plaintiff is entitled to a judgment declaring: (1) That under section 27 of the Transportation Corporations Law the permission to operate a community antenna television system (CATV) within the territorial limits of the City of Rochester comes under the franchise provisions of section 5-24 of the City Charter; (2) That the ordinance adopted by the City Council on December 30, 1969 (No. 69-597) granting a nonexclusive license to defendant Cable Television of Rochester, Inc. to operate and maintain a community antenna system in the City of Rochester, New York, did not comply with section 5-24 of the City Charter and is invalid.

 Chapter 566 of the Laws of 1890 was an act in relation to transportation corporations, excepting railroads, constituting chapter forty of the general laws. Section 102 thereof pertained to the construction of lines and omitted the language that required permission of local authorities which was enacted by chapter 483 of the Laws of 1881 and was not repealed by the later act. Chapter 219 of the Laws of 1909 enacted the Transportation Corporations Law as chapter 63 of the Consolidated Laws and under section 102, the former section 102 and the provisions of chapter 483 of the Laws of 1881, that required local permission were combined. Chapter 762 of the Laws of 1926 re-enacted the Transportation Corporations Law and the former section 102 is now section 27.