**The CITY OF ROME, NEW YORK, Plaintiff**

v.

**VERIZON COMMUNICATIONS, INC., Defendant.**

No. 02–CV–0748.

United States District Court, N.D. New York.

Jan. 17, 2003.

Office of the Corporation Counsel, Rome, NY (Timothy A. Benedict, Esq., of counsel), for Plaintiff.

Hancock & Estabrook, LLP, Syracuse, NY (David Linger, Esq., John G. Powers, Esq., of counsel), Wiley Rein & Fielding LLP, Washington, DC (Andrew G. McBride, Esq., Eve J. Klindera, Esq., of counsel), for Defendant.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff, The City of Rome, New York ("City" or "Rome"), commenced the instant action against defendant, Verizon Communications, Inc. ("VCI") seeking a declaratory judgment construing the parties' legal rights with respect to VCI's use of public streets and rights-of-way to transact its telecommunications business within the City. VCI moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff opposed.

Oral argument was heard on August 23, 2002 in Albany, New York. Decision was reserved.

## II. FACTS

Rome is a municipal corporation within the State of New York. VCI is a telecommunications company that does business in the State of New York. On December 8, 1949, Rome granted VCI's predecessor, the New York Telephone Company:

permission to use all of the public streets, highways, roads, avenues, lanes and alleys, or parts thereof, in the City of Rome, Oneida County, New York, for the purpose of, from time to time, constructing, laying, maintaining, repairing and operating lines of electrical conductors under ground and of constructing, reconstructing, reinforcing, maintaining and repairing lines of electrical conduits or underground ducts or pipes for the reception of such electrical conductors,

together with its manholes, lateral connections to curb poles and property lines, cables and wires not encased in conduit and its other appurtenances and fixtures, necessary in connection with the transaction of its business.

(Compl. at Ex. A.) At the time Rome granted VCI permission to use its public streets and other areas, Section 33 of the Rome City Charter, entitled "Disposition of Real Estate; franchises" provided that "[n]o franchise shall be granted or be operated for a period longer than fifty years." (*Id.* at Ex. B.)

By letter dated May 17, 2001, Rome sent VCI a letter stating that by operation of Section 33 of the Rome City Charter:

the franchise granted to New York Telephone expired on December 19, 1999, and must be renewed. The renewal process will enable Verizon to continue to use the City's rights-of-way, and permit both parties to discuss, among other things, reasonable compensation to be paid by Verizon for use of said rights-of-way.

(*Id.* at Ex. C.) By letter dated June 5, 2001, VCI responded that its franchise was not granted by Rome, but by the State of New York pursuant to N.Y. Transp. Corp. Law § 27, and therefore, "the City lacks the authority to require Verizon to enter into a franchise agreement in order to occupy and use the City's streets in order to provide telecommunications services within the City." (*Id.*) On June 25, 2001, Rome responded to VCI stating that:

The City understands the existence and scope of Verizon's franchise granted by New York State; however, said franchise does not permit Verizon to place, maintain, repair or operate its lines or conduits underground within the City's rights-of-way. Accordingly, the City granted Verizon's predecessor ... the ability to lay its lines and conduits un-derground within the City's rights-of-way via the grant of a franchise in 1949.

(*Id.* at Ex. D.) The letter continued to state that the franchise expired in 1999 pursuant to Section 33 of the municipal code and that federal law "provides the City with the ability to obtain reasonable compensation for Verizon's utilization of the City's rights-of-way." (*Id.*) VCI persisted that Rome had no authority to request renewal of any franchise agreements.

Finding itself at an impasse with VCI, Rome commenced an action in the New York State Supreme Court seeking a declaration of the parties' rights regarding VCI's continued use of Rome's rights-of-way. VCI then removed the action to federal court claiming that, in actuality, Rome's Complaint seeks a declaration of its rights under 47 U.S.C. § 253(c).

### III. STANDARD OF REVIEW

#### A. Conversion to Summary Judgment

As noted above, VCI initially moved to dismiss the Complaint pursuant to Fed. R.Civ.P. 12(b)(6). Because both parties submitted materials outside of the pleadings in connection with the pending motion, by Order dated October 16, 2002, the parties were advised that the pending motion would be treated as one for summary judgment and disposed of in accordance with Rule 56. (*See* Oct. 16, 2002 Order.) The parties also were afforded time to submit additional supporting materials contemplated by Rule 56 and supplemental memoranda of law. (*See id.*) Both parties have now done so.

#### B. Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## IV. *DISCUSSION*

The City of Rome seeks a declaration that VCI is obligated to negotiate the terms of a new agreement to utilize the City's rights-of-way. VCI responds that the City's proposed terms violate the Telecommunications Act of 1996 (the "Act"), Pub.L. 104–104, 110 Stat. 56, 47 U.S.C. § 253.

The Telecommunications Act "was passed to promote competition among and reduce regulation of telecommunications providers." *City of Auburn v. Qwest Corp.,* 260 F.3d 1160, 1170 (9th Cir.2001), *cert. denied,* 534 U.S. 1079, 122 S.Ct. 809, 151 L.Ed.2d 694 (2002). Section 253 provides, in pertinent part, that:

(a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority

Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

47 U.S.C. § 253.

By its plain, broad terms, section 253 preempts many state and local laws. "The preemption is virtually absolute and its purpose is clear—certain aspects of telecommunications regulation are uniquely the province of the federal government and Congress has narrowly circumscribed the role of state and local governments in this arena." *City of Auburn,* 260 F.3d at 1175. The general rule set forth in section 253(a) is that state and local governments may not impose any legal requirement that prohibits or has the effect of prohibiting any entity from providing telecommunications service. 47 U.S.C. § 253(a); *City of Auburn,* 260 F.3d at 1170. Sections 253(b) and 253(c) set forth certain limited powers that state and local govern-

ments retain notwithstanding section 253(a)'s general prohibition. *Id.* Because the City of Rome is a local government authority, its reserved powers are those set forth in section 253(c). 47 U.S.C. § 253(c). That subsection permits local governments to impose legal requirements upon telecommunications providers in two limited circumstances: (1) to manage the public rights-of-way; and (2) to require fair and reasonable compensation from telecommunications providers on a competitively neutral and non-discriminatory manner. *See TCG New York, Inc. v. City of White Plains,* 305 F.3d 67, 81 (2d Cir. 2002); *City of Auburn,* 260 F.3d at 1179. Thus, the question is whether the requirements the City wishes to impose upon VCI is limited to these two permissible activities. *See TCG New York,* 305 F.3d at 81.

The City's position is that the 1949 agreement with VCI expired in 1999, and thus, VCI is required to negotiate a new agreement. The City represents that it has entered into franchise agreements with two other telecommunications providers and that "[s]aid agreements embody the City's updated language and provisions relating to the use of its rights-of-way by telecommunications providers, and which said form would substantially be the same form utilized between City and [VCI]." (Benedict Aff., at ¶ 16, Ex. I.) It is, therefore, this "standard" franchise agreement ("Agreement") that must be analyzed for compliance with section 253.

"[A] franchise requirement per se is not preempted by the [Act]." *City of Auburn,* 260 F.3d at 1177. The City may impose requirements upon a telecommunications provider that are consistent with section 253(c) and other applicable laws and legal rights. Here, however, several

provisions of the City's Agreement with telecommunications companies run afoul of section 253. Certain provisions of the Agreement impermissibly seek to regulate the provision of telecommunications services. For example, Section III of the Agreement requires that telecommunications providers "agree[ ] to comply with any telecommunications policy or ordinance that is properly enacted by the City." (Benedict Aff., Ex. I, sec. III.) Similarly, Section V requires the telecommunications provider to "adopt standards aimed at maintaining a high level of customer service" and to "agree[ ] to comply with all federal and state customer service and universal service standards." (Benedict Aff., Ex. I, sec. V(a).) The Agreement also requires telecommunications providers to "endeavor to make its services available at competitive rates to all segments of the community regardless of income, geography, educational institutions and governmental entities and work with the City to help address the City's telecommunications needs." (Benedict Aff., Ex. I. sec. V(b).)

" 'Municipalities ... have a very limited and proscribed role in the regulation of telecommunications.' " *City of Auburn,* 260 F.3d at 1175 (quoting *AT & T Comm's v. City of Dallas,* 8 F.Supp.2d 582, 591 (N.D.Tex.1998)). Section 253 permits municipalities to manage rights-of-way; not regulate telecommunications. *TCG New York,* 305 F.3d at 81. While the City's inclusion of such terms may be in the public interest, they simply are not within the City's limited authority to manage its rights-of-way and obtain reasonable compensation for the use of such rights-of-way. *See id.*[1]

---

1. Some of the requirements the City seeks to impose, such as preserving and advancing universal service, ensuring the continued quality of telecommunications services, and safeguarding the rights of consumers, are within the powers reserved to the states; not local governments such as Rome. *See* 47 U.S.C. § 253(b).

Other provisions in the Agreement give the City too much authority to control the provision of telecommunications services. For example, the proposed franchise permits "[t]he Common Council, under reasonable regulations, ... the right to order the removal or relocation of poles, wires and other appurtenances erected by the Company whenever, in the judgment of the Common Council, such action is necessary in the public interest." (Benedict Aff., Ex. I, sec. III(h).) As the Second Circuit has stated, "[a] provision that gives the Common Council the right to reject any application based on any public interest facts ... that are deemed pertinent by the City amounts to a right to prohibit providing telecommunications services, albeit one that can be waived by the City." *TCG New York*, 305 F.3d at 76 (internal quotations omitted). By analogy, the provision at issue here similarly amounts to the City's right to prohibit the provision of telecommunications services, and thus, conflicts with section 235(a).

The Agreement also permits the City to "revoke the grant of authority to operate and maintain a telephone, telegraph or telecommunications system" for certain reasons unrelated to the regulation of its rights-of-way, such as a telecommunications provider's:

(2) Failure to comply with any local, state or federal law, ordinance rule or regulation;

(3) Failure to comply with the rules and regulations of either the Federal Communications Commission or New York State Public Service Commission; ...

(5) Commission of fraudulent or deceitful practices; [or]

(6) The filing of a petition in bankruptcy by the Company or by creditors of the Company....

(Benedict Aff., Ex. I, sec. XII.) The franchise also reserves to the City carte blanche to "adopt, in addition to the provision herein ... such additional regulations as it shall find necessary in the exercise of the police power." These broad based powers permitting the City to alter, amend, or revoke the franchise extend well beyond its right to manage and obtain reasonable compensation for the use of its rights-of-way. Accordingly, these provisions exceed the City's limited authority under section 253(c). *See City of Auburn*, 260 F.3d at 1179 ("[P]erhaps most problematic, the ordinances grant the ... Cities unfettered discretion to insist on unspecified franchise terms and to grant, deny, or revoke a franchise based on unnamed factors. This grant goes far beyond the limits of § 253(c), encompassing anything a city deems to be in the public interest. Like the other courts that have faced this question, we conclude that such ordinances are too vague and too broad to comply with § 253(c).").

Similarly, subject to certain exceptions, the franchise prohibits the telecommunications provider from transferring or assigning the agreement without the express written consent of the City. It is unclear how or why such a broad provision is necessary for the City to regulate its rights-of-way. *See TCG New York*, 305 F.3d at 82. As the Second Circuit has stated:

A more limited franchise transfer provision could be reasonably related to regulating the use of the rights-of-way. For example, a transfer limitation, if applied neutrally to all franchisees, might permit rejection of a transferee on the basis of insufficient assurance of ability to pay reasonably imposed fees for use of rights-of-way. However, because [the

City] cannot legitimately turn away 'any' provider of telecommunications services, § 253(a), a provision of sweeping breadth whose main purpose is to force each new telecommunications provider to receive [the City's] blessing before offering services, even if its services represent no change from the services offered and burdens imposed by a prior franchisee, is invalid.

*Id.; City of Auburn,* 260 F.3d at 1178. Because the provision at issue is not so limited, it extends too far beyond the City's authority.

Taken together, the above provisions have the effect of prohibiting VCI from providing interstate or intrastate telecommunications services.[2]  Accordingly, the City's Agreement as a whole violates section 253(a).  The City may not preclude VCI from accessing its facilities on the grounds that the 1949 agreement has expired because, by doing so, the City unquestionably would be running afoul of section 253(a)'s mandate that local governments not prohibit a telecommunications provider from providing telecommunications services.[3]  While the City is permitted to enact and impose lawful ordinances and legal requirements on VCI that conform with section 253(c) (which is limited to the right to manage the public rights-of-way and require fair and reasonable com-

pensation for the use of public rights-of-way)[4] and other applicable laws and legal rights, VCI is under no obligation to negotiate with the City under the terms of the proposed Agreement.

## V.  CONCLUSION

The City's proposed Franchise Agreement with VCI runs afoul of 47 U.S.C. § 253.  Accordingly,

It is ORDERED that

1.  Defendant Verizon Communications, Inc.'s motion for summary judgment is GRANTED;

2.  The Complaint is DISMISSED.

The Clerk of the Court is instructed to enter judgment accordingly.

IT IS SO ORDERED.

---

**2.**  Because there are numerous provisions of the Agreement that violate section 253(a), it is unnecessary to decide whether the fee structures contained in the Agreement also violate section 253(a).  *See TCG New York,* 305 F.3d at 79 ("[B]ecause the issues of whether 'reasonable compensation' can include gross revenue fees and, if so, what percentage of gross revenue may be exacted are difficult and not necessary to resolve this appeal ... we decline to reach the issue.").

**3.**  It is unnecessary to determine whether the 1949 Agreement was enacted pursuant to New York State Transp.  Corps.  Law section 27 and subject to section 33 of the Rome Municipal Charter because, regardless of whether it was, the requirements the City seeks to impose upon VCI run afoul of section 253.

**4.**  Such terms must be "competitively neutral and nondiscriminatory" (§ 253(c)) with Rome's franchise agreements with the other two telecommunication providers.