TC SYSTEMS, INC. and TELEPORT COMMUNICATIONS NEW YORK, Plaintiffs–Counter–Defendants,

v.

TOWN OF COLONIE, NEW YORK Defendant–Counter–Claimant.

No. 1:00–CV–1972 FJS/RFT.

United States District Court, N.D. New York.

May 16, 2003.

See also 213 F.Supp.2d 171.

Whiteman Osterman & Hanna, Albany, Attorneys for Plaintiffs–Counter–Defendants, Neil L. Levine, Esq.

Cole, Raywid & Braverman, L.L.P., Washington, D.C., Attorneys for Plaintiffs–Counter–Defendants, Robert G. Scott, Jr., Esq., T. Scott Thompson, Esq.

Town of Colonie, Office of the Town Attorney, Newtonville, Attorneys for Defendant–Counter–Claimant, Danielle Demers, Esq.

Miller & Van Eaton, P.L.L.C., Washington, D.C., Attorneys for Defendant–Counter–Claimant, William Malone, Esq., Matthew C. Ames, Esq., Marci L. Frischkorn, Esq., of Counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiffs–Counter–Defendants TC Systems, Inc. and Teleport Communications New York (collectively, "Plaintiffs" or "TCG") commenced this action on December 22, 2000, against Defendant–Counter–Claimant Town of Colonie, New York ("Defendant" or "the Town"), alleging that the Town's Local Law No. 13 of 1999 ("Local Law No. 13") and Draft Franchise Agreement ("Draft Franchise") violate both state and federal law. Specifically, Plaintiffs' Amended Complaint contains twelve causes of action asserting various violations of § 253 of the Federal Telecommunications Act of 1996 (the "TCA"), New York State law and the United States Constitution.

In response to Plaintiffs' Amended Complaint, Defendant filed counterclaims alleging that Plaintiffs have violated Section 27 of the New York Transportation Corporations Law ("Section 27") and Local Law No. 13.

## II. BACKGROUND

Plaintiffs are wholly owned subsidiaries of AT & T corporation. Plaintiff TC Systems, Inc. ("TC Systems") is a provider of telephone and telecommunications services and, as such, is classified as a Transportation Corporation under New York Transportation Corporations Law.[1] Plaintiff TC Systems is authorized to erect, construct, own, use and maintain lines for telephone purposes within the State of New York under New York Transportation Corporations Law. *See* N.Y. Transp. Corp. Law §§ 2, 25, 27 (McKinney 2002).[2] Plaintiff Teleport Communications New York ("TC New York") is a New York General Partnership organized under the laws of New York State. TC New York provides telephone and telecommunications services to the public.

In August 1999, TC Systems applied for permission to construct and operate facilities for the provision of telephone and telecommunications services within the Town pursuant to the Town's then-existing laws. Subsequently, in November 1999, the Town adopted Local Law No. 13, which implemented regulations governing the issuance of franchises to construct, operate and maintain facilities for the provision of telecommunications services within the Town. *See* Local Law No. 13. Under the terms of Local Law No.

---

1. Section 2 of the New York Transportation Corporations Law classifies transportation corporations into nine distinct categories. Subdivision 2 classifies one such corporation as "[a] telegraph corporation, a telephone corporation or a telegraph and telephone corporation." N.Y. Transp. Corp. Law § 2(2) (McKinney 2002).

2. The New York Public Service Commission has issued both Plaintiffs certificates of public convenience and necessity for the provision of public telephone service in the State of New York. *See* N.Y. Pub. Serv. Law § 99 (McKinney 2001).

13, telecommunications providers are required to obtain a franchise from the Town as a prerequisite to using or occupying the Town's rights-of-way as well as installing, constructing, operating or maintaining equipment in the Town's rights-of-way.

On or about September 11, 2000, in an attempt to facilitate the initiation of construction during the pendency of its application, TC Systems sent the Town a proposed interim agreement which the Town subsequently rejected. By letter dated September 22, 2000, the Town informed TC Systems that it had misplaced its application and requested that TC Systems submit another application pursuant to Local Law No. 13. TC Systems did not resubmit the application as requested. It is undisputed that TC New York has never submitted an application for a franchise or license to the Town.

Pursuant to Local Law No. 13, because Plaintiffs do not have the mandatory franchise, they are prohibited from using, occupying, or constructing facilities in the Town's rights-of-way. However, notwithstanding their failure to procure a franchise, Plaintiffs concede that they are currently providing telecommunications services to at least one customer in the Town. Moreover, Plaintiffs admit that some of their facilities were constructed within the Town as early as 2001.[3]

The present motions concern the validity of Local Law No. 13 and the Town's Draft Franchise, as well as Plaintiffs' unauthorized usage of the Town's rights-of-way.

## A. Local Law No. 13

Local Law No. 13 prohibits any telecommunications provider from (1) using or occupying the Town's rights-of-way, (2) installing, constructing, operating and maintaining equipment in the rights-of-way, and (3) offering telecommunications services for sale or resale to any other person without a franchise and/or license granted by the Town. *See* Local Law No. 13, § 173–3(B).

Pursuant to Local Law No. 13, in order to obtain a franchise from the Town, a telecommunications provider must complete an application form which must include, *inter alia*, (1) the applicant's name, address, and telephone number; (2) a description of the telecommunications services proposed to be provided; (3) a description of the proposed franchise and/or license area or a description of the specific rights-of-way and/or portions thereof proposed to be used; (4) a proposed construction schedule; (5) plans and profiles showing the proposed location of the telecommunications system and all existing utilities within the rights-of-way; (6) the ownership of the applicant and identification of all affiliated persons; and (7) an engineer's estimated cost of the proposed project. *See id.* at § 173–6(C). There is also a non-refundable application fee. *See id.* at § 173–6(D).

Completed applications are then in the hands of the Department of Public Works (the "DPW"), which "may then consider" such factors it deems "appropriate in the public interest," provided that such factors are "consistent with applicable law," including, *inter alia*, (1) the applicant's legal, financial, technical and other appropriate qualifications; (2) the applicant's ability to maintain the property of the Town in good condition throughout the term of the franchise or license; (3) any services or uses of the rights-of-way that may be precluded by the grant of the franchise or license; (4) the adverse impact of the proposed franchise or license on the efficient use of

---

**3.** Plaintiffs maintain that such construction is not within the Town's rights-of-way.

the rights-of-way or utilities in the present and the future; (5) the applicant's willingness and ability to meet construction and physical requirements and town highway and drainage standards and to abide by all lawful conditions, limitations, requirements and policies with respect to the franchise or license; (6) the adequacy of the terms and conditions of the proposed franchise agreement or license to protect the public interest, consistent with applicable law; and (7) any other public interest factors or considerations that the Town has a lawful right to consider and that the Town deems pertinent for safeguarding the interests of the Town and the public. *See id.* at § 173–7. The DPW is then empowered to make "such investigations and take ... such other steps as the town deems necessary or appropriate to consider and act on applications for franchises[.]" *Id.* at § 173–8. The DPW "may [also] require the applicant to furnish additional information[.]" *Id.*

The applicant and the Town will then negotiate an agreement in accordance with the Local Law. *See id.* at § 173–9. However, the Town may still "reject any application which is incomplete or otherwise fails to comply with applicable law[s], ... rules, [and] regulations[.]" *Id.* A public hearing will then be held and then, upon completion of these steps, "the Town Board may grant or deny the franchise ... and may specify the conditions under which the franchise or license is granted." *Id.* at § 173–10(B).

Once the Franchise Agreement is executed and approved, it is subject to several conditions and requirements. Most notably, § 173–11(B) enumerates the records/reports that the franchisee must provide to the Town, including an outside audit of revenue for the system in the Town and "such other information relating to the franchisee or licensee as the town

may consider useful." *Id.* at § 173–11(B)(1)–(9). Further, pursuant to Local Law No. 13, the franchisee is required to "keep the town fully informed as to all matters in connection with or affecting the installation, construction, reconstruction, removal, maintenance ... and repair of [the] franchisee's ... telecommunications system, franchisee's accounting methods ... and the recording and reporting by franchisee of all revenues[.]" *Id.* at § 173–11(B).

Local Law No. 13 also requires a provider to obtain the Town's consent prior to any assignment or transfer of a franchise. Local Law No. 13 further provides that such an assignment or transfer will occur "only on such conditions as may therein be prescribed." *Id.* at § 173–11(E)(2).

Finally, Local Law No. 13 contains a fee provision that requires a franchisee to pay $5,000 or 5% of gross revenues, whichever is greater. *See id.* at § 173–13.

### B. The Draft Franchise

Plaintiffs also challenge provisions of the Draft Franchise that the Town seeks to impose on all prospective telecommunications providers. Plaintiffs challenge the Draft Franchise's material terms and conditions including, *inter alia,* the provisions that (1) restate the requirements of Local Law No. 13, (2) require Plaintiffs to give the Town two dark single model fiber conductors and pay all third-party costs that the Town has incurred during the franchise process, (3) require Plaintiffs to waive their right to any claim or proceeding challenging the terms of the Local Law or Draft Franchise as a prerequisite to obtaining a franchise, and (4) reserve the Town's right to terminate the franchisee's service at any time.

Presently before the Court are (1) Plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure on their First, Second, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Actions;[4] (2) Defendant's motion for summary judgment on Plaintiffs' claims and Defendant's counterclaims; and (3) Plaintiffs' cross-motion for summary judgment on Defendant's counterclaims. The Court heard oral argument on January 24, 2003, at which time, it reserved decision. The following constitutes the Court's written determination regarding the pending motions.

## III. DISCUSSION

### A. Standard of review

A moving party will be granted summary judgment if there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The burden is on the moving party to demonstrate that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must come forward with specific facts demonstrating that a genuine issue exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate inquiry is whether a reasonable jury could find for the non-moving party based on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "All reasonable inferences and any ambiguities are drawn in favor of the nonmoving party." *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citation omitted). With these

considerations in mind, the Court will address the present motions.

### B. Ripeness

Defendant argues that Plaintiff TC New York's claims should be dismissed as unripe because TC New York has not, to date, applied for a franchise under the Local Law.

■ The "ripeness" requirement is meant "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). To determine whether TC New York's claims are "ripe for review" the Court must determine (1) if the issues are fit for judicial decision and (2) if the parties will suffer a hardship if the Court declines to hear their claims at this time. *City of Auburn v. Qwest Corp.,* 260 F.3d 1160, 1171 (9th Cir.2001) (citation omitted). However, before reaching these questions, "[t]he ripeness inquiry has a constitutional component ... [which must be] address[ed] first[.]" *Id.*

■ The constitutional component of the ripeness inquiry is rooted in the "case or controversy" requirement of Article III which focuses on "whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement[.]' " *Id.* The Supreme Court has established that where "promulgation of the challenged regulations presents plaintiffs with [an] immediate dilemma [of choosing] between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation" the constitutional component

---

**4.** Plaintiffs' memorandum of law in support of their motion for summary judgment also concedes that their remaining causes of action are rendered moot by the application of

*TCG New York, Inc. v. City of White Plains* to the present case (i.e. Plaintiffs' Third, Fourth and Fifth causes of action). *See* Plaintiffs' Memorandum of Law at 2.

of ripeness is satisfied. *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (citations omitted). In the present case, TC New York is in this precise predicament as it faces the dilemma of either complying with the franchise process or suffering the costs and sanctions of noncompliance. Plaintiff TC New York is claiming injury based on the very existence of the Local Law. Thus, the constitutional component of the inquiry is satisfied.

■ Second, TC New York's claims present a pure question of law—are Local Law No. 13 and the Draft Franchise preempted by federal or state law. Thus, the controversy is clearly fit for judicial decision. No purpose would be served by refraining from deciding the matter at this time. Local Law No. 13 has already been enacted; TC New York is subject to it; and the complete text is before the Court.

Finally, the hardship of withholding review is undeniable as it is likely to either prohibit TC New York from providing profitable service within the Town or subject it to sanctions for doing so without a franchise.

Moreover, the decision that TC New York's claims are ripe is consistent with what other courts, faced with a similar challenge, have held. *See City of Auburn,* 260 F.3d at 1170–73 (holding that an action challenging local ordinances was ripe for review despite the fact that plaintiffs had not yet applied for a permit).

Thus, having determined that this case is ripe for review,[5] the Court proceeds to consider the merits of the present motions.

## C. Preemption by federal law

Congress passed the TCA in 1996 in order "to end the monopolies in local telephone services and to benefit consumers by fostering competition between telephone companies in cities throughout the United States[.]" *AT & T Communications of the Southwest, Inc. v. City of Dallas,* 8 F.Supp.2d 582, 585 (N.D.Tex. 1998). In furtherance of this goal, Congress implemented restrictions on the authority of local governments to limit the ability of telecommunications companies to do business in local markets. *See AT & T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 371, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). Section 253 of the TCA "embodies the balance between Congress' 'new free market vision' and its recognition of the 'continuing need for state and local governments to regulate telecommunications providers on grounds such as consumer protection and public safety.' " *TCG New York, Inc. v. City of White Plains,* 125 F.Supp.2d 81, 87 (2000), *aff'd in part, rev'd in part on other grounds,* 305 F.3d 67 (2d Cir.2002) (quotation omitted). The plain terms of § 253 preempt many local laws; however, notwithstanding this general prohibition, local governments retain some regulatory authority. Under § 253, all state and local regulations that prohibit or have the effect of prohibiting any company's ability to provide telecommunications services are preempted *unless* such regulations fall within either of the statute's two "safe harbor" provisions, §§ 253(b) and (c). *See City of Auburn,* 260 F.3d at 1175. Only

---

**5.** Defendant also argues that Plaintiff TC New York does not have standing to challenge Local Law No. 13 or the Draft Franchise. However, this "standing argument is inextricably linked with [its] ripeness challenge. Because [the Court] conclude[s] that this case is ripe, [the Court] necessarily determine[s] that [TC New York]—to whom the ordinance[ ] [and the Draft Franchise] are directed—has standing to challenge the ordinance[ ] [and the Draft Franchise]." *City of Auburn,* 260 F.3d at 1172 n. 6 (reaching an identical conclusion in a similar case).

§ 253(c), pertaining to *local regulation* of rights-of-way, is applicable to the case at hand. *See id.* at 1176.

Thus, as the Second Circuit has clarified, the appropriate methodology for resolving the present claims is to first determine whether the Town's regulations fall within the proscription of § 253(a) and then, if they do, to determine whether certain provisions are nevertheless permissible under section § 253(c). *See TCG New York, Inc. v. City of White Plains,* 305 F.3d 67, 77 (2d Cir.2002).

*1. Section 253(a)—Whether the Town's Local Law and Draft Franchise prohibit or have the effect of prohibiting telecommunications services*

■ Section 253(a) places a limitation on the Town's authority to regulate telecommunications services. Specifically, § 253(a) provides that no **"local statute** ... may **prohibit** or **have the effect of prohibiting** the ability of any entity to provide ... telecommunications service." 47 U.S.C. § 253(a) (emphasis added). To determine whether an ordinance **"has the effect of prohibiting** the provision of telecommunications services," the test, as enumerated by the Second Circuit, is " 'whether the ordinance materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment.' " *TCG New York,* 305 F.3d at 76 (quotation omitted). The burden of showing that a municipality has violated § 253(a) is on the party seeking preemption, in this case, Plaintiffs. *See New Jersey Payphone Ass'n Inc. v. Town of West N.Y.,* 130 F.Supp.2d 631, 636 (D.N.J.2001) (citation omitted).

Plaintiffs point to the following provisions of Local Law No. 13 which they contend, individually, and as a whole, oper-ate to effectively prohibit telecommunications services:

(1) § 173–3(E) which reserves the Town Board's right to unilaterally modify any provision of Local Law No. 13 by amendment. *See* Local Law No. 13, § 173–3(E).

(2) § 173–7(A) and § 173–7(A)(6) which provide that the DPW "may consider such factors as it deems appropriate and in the public interest, provided that such factors are consistent with applicable law, including ... [a]ny ... public interest factors or considerations that the town has a lawful right to consider and that are deemed pertinent by the town for safeguarding the interests of the town and the public." *Id.* at § 173–7(A)(6).

(3) § 173–8 which delegates to the DPW the power to "make such investigations and take or authorize the taking of such other steps as the town deems necessary or appropriate[.]" *Id.* at § 173–8.

(4) § 173–10(B) which provides that "[c]onsistent with applicable law, upon completion of the steps deemed appropriate by the Town Board and the [DPW], the Town Board may grant or deny the franchise and may specify the conditions under which the franchise ... is granted." *Id.* at § 173–10(B).

(5) § 173–11 which provides the terms and conditions applicable to all franchises including that, prior to construction, the applicant must submit a plan for construction which will be reviewed and commented on by the DPW and the various town departments affected. Then, the final determination as to what needs to be changed will be determined by the DPW. *See id.* at § 173–11.

(6) § 173–11(B)(2), (3) and (4) which require the franchisee to keep the Town fully informed of all matters in connection with or affecting the installation, construction, reconstruction, removal, maintenance, operation and repair of a franchisee's telecommunications system, accounting methods and procedures, and the recording and reporting by the franchisee of all revenues. Section 173–11(B)(3) further provides that the franchisee shall report to the Town such other information relating to the Town as the Town may consider useful and § 173(B)(4) provides that the Town shall have access to examine the papers, books, accounts, etc. of the franchisee. *See id.* at § 173–11.

(7) § 173–11(E) which requires the Town's consent prior to any assignment or transfer of a franchise and gives the Town the right to impose "such conditions as may therein be prescribed" on such assignment or transfer. *Id.* at § 173–11(E).

(8) § 173–13 which requires a franchisee to pay $5,000 or 5% of gross revenues, whichever is greater. *See id.* at § 173–13.

Plaintiffs' challenge is not limited to the terms of Local Law No. 13 but, rather, extends to provisions in the Draft Franchise as well. Plaintiffs argue that numerous provisions of the Draft Franchise similarly have the effect of prohibiting the provision of telecommunications services.[6] Plaintiffs specifically contest (1) the provision that requires a prospective franchisee to describe the services it intends to provide; (2) the provision that requires a prospective franchisee to waive any claim or proceeding challenging the terms of Local Law No. 13 or the Draft Franchise as a prerequisite to obtaining a franchise from the Town; (3) the provision that requires a franchisee to pay a franchise fee and provide the Town with dark fiber; (4) the provision that reserves the Town's right to be kept informed of any new services; (5) the provision providing the Town with the right to renegotiate, amend, or terminate the franchise if new services are offered; and (6) the provision that gives the Town the unilateral right to terminate a franchisee's service in the Town's discretion. Plaintiffs argue that the Second Circuit's decision in *TCG New York* governs the outcome of the present case and mandates a finding that the Town's regulations "run afoul of § 253(a)." *TCG New York,* 305 F.3d at 76.

In *TCG New York,* the Second Circuit, faced with an Ordinance almost identical to Local Law No. 13, held that "[c]ertain portions of White Plains's Ordinance clearly have the effect of prohibiting TCG from providing telecommunications service." *TCG New York,* 305 F.3d at 76. The court went on to provide the rationale that led to this conclusion. The court noted that "[i]n particular, the provision that

---

**6.** Defendant argues that Plaintiffs' claims challenging the Draft Franchise should be dismissed as unripe because, at this time, the Draft Franchise is merely a proposal. The Court does not find this to be a persuasive argument. To begin with, the provisions set forth in the Draft Franchise are provisions that the Town has indicated that it intends to impose on franchisees, i.e. they are provisions that a prospective franchisee must accept if it wishes to obtain a franchise. Second, the Town has already entered into franchise agreements with at least two other entities, and the material terms of those agreements did not materially differ from the Draft Franchise. Finally, the Court's conclusion is consistent with the Second Circuit's decision in *TCG New York,* where the court had no problem addressing and invalidating provisions of a "proposed" franchise agreement. *See TCG New York,* 305 F.3d at 81–82.

gives the Common Council the right to reject any application based on any 'public interest factors ... that are deemed pertinent by the City' amounts to a right to prohibit providing telecommunications services, albeit one that can be waived by the City." *Id.* (citation omitted). The court held that "[i]n light of the obstacles that the Ordinance poses to TCG's ability to compete in White Plains on a fair basis, we conclude that the Ordinance violates § 253(a)." [7] *Id.* at 76–77.

Similarly, in *City of Auburn v. Qwest Corporation,* the Ninth Circuit pointed to a number of regulations similar to Local Law No. 13 that collectively amounted to a "prohibition" in violation of § 253(a): (1) an onerous application process that imposed burdensome requirements on the applicant and vested significant discretion with the local governing body to grant or deny the application; (2) a threat of penalties for failure to obtain a franchise; (3) regulation of transferability of ownership; (4) non-tax fees; and (5) vast discretion in the hands of the City to grant, deny, or revoke the franchise. *See City of Auburn,* 260 F.3d at 1176 (citations omitted).

In the present case, Local Law No. 13 and the Draft Franchise contain the very same provisions as those that the Second Circuit found amounted to "a right to prohibit providing telecommunications services[.]" *TCG New York,* 305 F.3d at 76. Therefore, as Defendant has failed to offer any meaningful distinction between the challenged provisions in the present case and those invalidated in *TCG New York,* the Court finds that the Second Circuit's decision in that case governs the outcome of the present case. Clearly, the Second

Circuit was concerned that the City of White Plains, could, in its discretion, prohibit TCG from providing telecommunications services within the City. This concern is also present here. Numerous provisions of both Local Law No. 13 and the Draft Franchise give the Town the option of prohibiting telecommunications services by a particular provider. Such a right runs afoul of § 253(a). Additionally, although the Second Circuit did not divulge the other "portions of White Plains's Ordinance" that "clearly have the effect of prohibiting ... telecommunications service[,]" a comparison of the provisions of the White Plains Ordinance to Local Law No. 13 demonstrates that they are very similar. *Id.* at 76; *see also* Local Law No. 13. Thus, arguably, the same provisions are present in Local Law No. 13.

The Ninth Circuit's decision in *City of Auburn* provides further guidance. In that case, the court held that several provisions in the ordinances at issue "in combination, [had] the effect of prohibiting the provision of telecommunications services." *City of Auburn,* 260 F.3d at 1176. All of the provisions that the court in *Auburn* concluded amounted to an effective prohibition are similarly present in Local Law No. 13. *See, e.g.,* Local Law No. 13 at §§ 173–6, 173–7(A), 173–11(E). Local Law No. 13, as it stands, provides the Town with the right to prohibit TCG from providing telecommunications services for reasons that have nothing to do with the Town's rights-of-way. Such unbounded discretion to pick and choose between providers is precisely what § 253 was meant to guard against.

**7.** Contrary to Defendant's assertion, it was not the actual effects of the White Plains Ordinance that concerned the court. The Second Circuit clearly articulated that the fact that White Plains retained the discretion to reject any application based on "public interest factors" amounted to a prohibition whether or not the City actually exercised such discretion. *See TCG New York,* 305 F.3d at 76.

The law does not require that the claimed prohibition be absolute. *See TCG New York,* 305 F.3d at 76 (citation omitted). Rather, all that Plaintiffs must do to satisfy their burden is show that, as a whole, the Town's regulations and actions materially inhibit Plaintiffs' ability to provide telecommunications services. The Court finds that Plaintiffs have met their burden. Clearly the requirements imposed on TCG by Local Law No. 13 and the Draft Franchise, when viewed as a whole, have the effect of prohibiting TCG's ability to provide telecommunications services within the Town, in violation of § 253(a).[8]

### 2. *Whether the Town's Regulations are saved by § 253(c)*

█ Once the party seeking preemption has sustained its burden of showing that a local regulation has violated § 253(a), the burden of proving that the regulation is saved by § 253(c) is on the party claiming that the "safe harbor" applies, in this case, the Town. *See New Jersey Payphone Ass'n,* 130 F.Supp.2d at 636 (citation omitted). Section 253(c) reserves the authority of local governments to "manage the public rights-of-way," as well as their *right* to charge "fair and reasonable compensation," as long as it is done on a "competitively neutral and nondiscriminatory basis." 47 U.S.C. § 253(c).

### a. *Non–Fee Related Provisions*

With respect to the Town's regulations that do not involve fees, "the question is whether the regulations are designed to 'manage the public rights-of-way,' as permitted by § 253(c), or impermissibly go further." *TCG New York,* 305 F.3d at 81 (citation omitted). Management of the rights-of-way means "control over the

right-of-way itself, not control over companies with facilities in the right-of-way[.]" *City of Auburn,* 260 F.3d at 1177.

The FCC and the courts have provided several examples of permissible rights-of-way management, including: regulation of street excavation, regulation of placement of facilities within the public rights-of-way, imposition of fees to cover increased costs resulting from construction, monitoring of construction in the rights-of-way, as well as indemnity requirements. *See id.*

In 1997, the FCC clarified the permissible scope of local regulation of rights-of-way:

> Local governments must be allowed to perform the range of vital tasks necessary to preserve the physical integrity of streets and highways, to control the orderly flow of vehicles and pedestrians, to manage gas, water, cable (both electric and cable television), and telephone facilities that crisscross the streets and public rights-of-way.... [T]ypes of activities that fall within the sphere of appropriate rights-of-way management ... include coordination of construction schedules, determination of insurance, bonding and indemnity requirements, establishment and enforcement of building codes, and keeping track of the various systems using the rights-of-way to prevent interference between them.

*In re TCI Cablevision,* 12 FCC Rcd. 21, 396, 21441 (F.C.C.1997); *see also TCG New York,* 305 F.3d at 76 ("the FCC's decisions interpreting the scope of § 253(c) merit some deference") (citations omitted).

█ The case law clearly establishes that local regulations which seek to regulate a town's rights-of way are permissible, while local regulations that seek to regulate the provision of telecommunications

---

**8.** It is therefore unnecessary to reach the issue of whether the Town's actions have the effect of prohibiting telecommunications services.

services or the telecommunications providers themselves, are impermissible.

### (i). Local Law No. 13

In the present case, Plaintiffs challenge the following non-fee provisions of Local Law No. 13 as unrelated to the Town's management of the public rights-of-way: Sections 173–3(E), 173–6(C)(2), 173–7(A), 173–7(A)(6), 173–8, 173–10(B), 173–11(A)(1)(b)–(c), 173–11(3)–(4), 173–11(B)(1)–(7), 173–11(E). The Court will address the challenged provisions below.[9]

■ First, the subsections of Local Law No. 13 that allow the Town or the DPW ultimate discretion "to consider any factor deemed to be in the public interest provide[ ] precisely the sort of discretion to prohibit telecommunications services that § 253 preempts." *TCG New York*, 305 F.3d at 81 (citation omitted). In *TCG New York*, the Second Circuit struck down virtually identical provisions contained in the White Plains Ordinance. Thus, § 173–7(A) of Local Law No. 13, which permits the DPW to "consider such factors as it deems appropriate and in the public interest" in deciding whether to grant a franchise, is invalidated. Further, §§ 173–7(A)(5) and (6), which permit the DPW to consider "[t]he adequacy of the terms and conditions of the proposed franchise . . . to

protect the public interest" and "[a]ny other public interest factors" with respect to granting a franchise, are similarly invalidated. Finally, § 173–10(B), which provides that "upon completion of the steps . . . the Town Board *may grant or deny* the franchise," is preempted for the same reasons.

■ Second, § 173–7(A)(1) which permits the DPW to consider the legal, financial and technical qualifications of the applicant in deciding whether to approve the franchise is preempted by the TCA. As the Second Circuit noted, such a provision "require[s] consideration of information" that is "not directly related to management of the rights-of-way." *TCG New York*, 305 F.3d at 81 (invalidating an identical provision of the White Plains Ordinance).

■ Third, the Court invalidates the disclosure requirements of Local Law No. 13 that are not related to management of the Town's rights-of-way. Again, the decision in *TCG New York* leads the Court to this conclusion. In TCG New York, the district court invalidated, and the Second Circuit affirmed the invalidation of, the subsections of the White Plains Ordinance that required disclosures to be made about the telecommunications services to be provided, the source of financing for the telecommunications services and the appli-

---

9. A fair reading of *TCG New York* implies that, contrary to Defendant's argument, whether a regulation is related to management of the rights-of-way is an issue that can be decided as a matter of law. In deciding whether the challenged provisions of the White Plains Ordinance were permissible rights-of-way regulations, both the Second Circuit and the district court looked at the challenged provisions themselves and not the way White Plains had, in fact, applied them. Certain provisions were clearly invalidated on their face as being an impermissible regulation of telecommunications services. For example, the Second Circuit affirmed the district court's invalidation of the provisions in

the proposed franchise agreement which "purported to waive TCG's right to challenge illegal provisions of the franchise in court." *TCG New York*, 305 F.3d at 82. The court did not invalidate the provisions because they were being **applied** in a way that prevented TCG from challenging the franchise but, rather, because it "purport[ed] to waive" their right to do so. *Id.* Similarly, the provision giving the "Common Council [the right] to consider any factor deemed to be in the public interest" was invalidated not because the Common Council **actually** considered such factors but, rather, because it **could**. *Id.* at 81.

cants' qualifications to receive a franchise. *Id.* at 81. The court invalidated these provisions on the ground that they "were relevant only for regulating telecommunications, which § 253 does not permit[.]" *Id.* Likewise, in the present case, the Court must invalidate § 173–6(C)(2).[10]

Fourth, Plaintiffs challenge § 173–11(E) which requires the Town's consent prior to any assignment or transfer of a franchise. In *TCG New York*, the Second Circuit invalidated the transfer/assignment provisions of the White Plains Ordinance and proposed franchise agreement. *See TCG New York*, 305 F.3d at 82. The court based its holding on the "unfettered breadth of the provision." *Id.* Essentially, because the provision gave White Plains the authority to legitimately turn away "any" provider without bounds, the court held the provision impermissible. However, the court explicitly noted that "[a] more limited franchise transfer provision could be reasonably related to regulating the use of the rights-of-way. For example, a transfer limitation, if applied neutrally to all franchisees, might permit rejection of a transferee on the basis of insufficient assurance of ability to pay reasonably imposed fees for use of rights-of-way." *Id.*

In the present case, § 173–11(E) lists specific factors that the Town will consider and provides that if the franchisee complies with these factors the Town "shall not unreasonably withhold its consent." Local Law No. 13, § 173–11(E)(3). The major features of § 173–11(E) are as follows: the Town must consent to any transfer or assignment but, the Local Law provides that such consent shall not be unreasonably withheld if (1) the franchisee

has paid the costs incurred by the Town in reviewing such request, (2) the proposed transferee or assignee is a reputable entity, (3) the proposed assignee or transferee is in sound financial condition as reasonably determined by the Town, and (4) the proposed assignee or transferee agrees to enter into an agreement with the Town. *See id.* These factors restrict the "breadth" of the provision and limit the Town's discretion. Thus, § 173–11(E) is distinguishable from the White Plains Ordinance and the Court finds it to be permissible under the TCA.

Fifth, pursuant to the decision in *TCG New York*, subsections 173–11(B)(3)–(4) must be read narrowly to satisfy the requirements of § 253(c). *TCG New York*, 125 F.Supp.2d at 92. These subsections provide that the franchisee "shall report to the town such other information ... as the town may consider useful and ... shall provide the town with access ... to examine, audit, review and/or obtain copies of the papers, books, [and] accounts ... of the franchisee[.]" Local Law No. 13, § 173–11(B)(3)–(4). Although some of this access and information may be relevant and necessary for management of the Town's rights-of-way, the subsections, as written, are overly broad and vague and thus, go well beyond the traditional scope of management of the public rights-of-way. "Therefore ... [the Town's] rights concerning inspection of records and requiring the carrier to maintain complete and accurate records must be limited to information necessary to enforce its rights-of-way regulations[.]" *TCG New York*, 125 F.Supp.2d at 92. Thus, the Court, guided by the approach taken in *TCG New York*,[11]

---

**10.** This provision is identical to § 2–3–02(ii), which the Second Circuit invalidated in *TCG New York*.

**11.** This approach was taken by the district court in *TCG New York* and left intact by the Second Circuit. In TCG New York, the district court noted that the provision that

finds that the reporting requirements of § 173–11(B), including § 173(B)(3)-(4), must be read narrowly to include only information necessary to manage the rights-of-way.

 Finally, the Court finds that the remaining challenged subsections of Local Law No. 13 comply with § 253. First, § 173–3(E) merely provides that the Town "may grant one or more franchises" and may "modify" any provision of Local Law No. 13 by amendment. *See* Local Law No. 13, § 173–3(E). Clearly the Town has the right to grant a number of franchises and the right to amend its own local law at any time. Such rights do not run afoul of § 253.[12] Second, § 173–8 merely provides guidance for the DPW in acting on a franchise application and is within the scope of permissible right-of-way management. Lastly, Plaintiffs object to § 173–11(A)(1)(b)–(c). Section 173–11(A) enumerates various "construction/relocation requirements" and is directly related to the Town's rights-of-way authority. This provision is designed to manage construction within the rights-of-way and assure that any disruption to the rights-of-way is minimal. Such provisions are not in violation of § 253.

In summary, the Court invalidates as contrary to § 253(a), and not saved by § 253(c), the following provisions of Local Law No. 13: Sections 173–7(A), 173–7(A)(1), 173–7(A)(5), 173–7(A)(6), 173–10(B), and 173–6(C)(2).

### (ii). The Draft Franchise

Plaintiffs' challenge is not limited to the terms of Local Law No. 13 but, rather,

extends to provisions of the Draft Franchise as well. Plaintiffs argue that a number of provisions of the Draft Franchise exceed the Town's authority to manage the public rights-of-way. Specifically, Plaintiffs contest sections C(1), C(2), C(4), C(5)(a), D(1), D(2), D(3)(c), D(4)(b), H (in its entirety), I(8), and I(14)(c).

The provisions set forth in the Draft Franchise are provisions that the Town has required prospective franchisees to accept. Therefore, each of these provisions must comport with § 253(c) and relate to the management of the Town's rights-of-way. With this in mind, the Court reviews the challenged subsections of the Draft Franchise.

 The majority of section C's requirements deal with general unobjectionable provisions including the grant of the franchise (section C(1)), the term of the franchise (section C(4)) and the renewal terms of a franchise (section C(5)(a)). *See TCG New York*, 125 F.Supp.2d at 91–92. However, the remaining challenged subsection, C(2), is problematic. Section C(2) requires Plaintiffs to notify the Town if they intend to add additional services or increase the size or number of their present services. Section C(2) further provides that "such change in services may require additional approvals from the Town." These provisions would be relevant only for regulating telecommunications services which § 253 does not permit the Town to do. Accordingly, the Court concludes that section C(2) of the Draft Fran-

---

"require[d] that the franchisee maintain complete and accurate books and the City's inspection rights thereto" as well as the City's right to inspect facilities and records of the franchisee must be "limited to information necessary to enforce its rights-of-way

regulations[.]" *TCG New York*, 125 F.Supp.2d at 92.

**12.** This subsection is identical to section 2–1–03 of the White Plains Ordinance, which neither the district court nor the Second Circuit in *TCG New York* found impermissible.

chise is preempted by the TCA and is, therefore, invalid.

■ Sections D(2), D(3)(c) and D(4)(b) of the Draft Franchise permit the Town to revoke or suspend Plaintiffs' rights for a number of reasons that are unrelated to regulation of the Town's rights-of-way. This broad grant of power exceeds the Town's authority under § 253(c) and, therefore, the subsections are invalid. *See City of Rome v. Verizon Communications, Inc.*, 240 F.Supp.2d 176, 180 (N.D.N.Y. 2003) (invalidating regulations that permitted the City to revoke, alter or amend a franchise based on reasons unrelated to the regulation of its rights-of-way).

■ Section H provides the Town with the authority to "establish ... such rules and regulations as may be in the public interest regarding [the] Franchisee's operations within the Town ...." This provision goes "far beyond the limits of § 253(c), encompassing anything a city deems to be in the public interest" and is therefore invalid. *Id.* at 180.

■ Section I(8) is titled "telecommunication services outside the scope of this franchise" and provides that if Plaintiffs receive authority to offer telecommunication services "outside the scope of this franchise" they must notify the Town and the Town may either enter into negotiations to revise or amend their existing franchise or proceed with early termination of their franchise. This provision gives the Town too much authority to control the provision of telecommunications services and, thus, conflicts with § 253 and is invalid.

■ Finally, section I(14)(c) of the Draft Franchise requires Plaintiffs to waive their right to bring a proceeding challenging the provisions of Local Law No. 13 or the Draft Franchise. Such a requirement is clearly invalid under § 253(c). As the Second Circuit stated:

> Requiring telecommunications providers to agree to not challenge the provisions of the franchise in court is a transparent attempt to circumvent § 253. The TCA does not create a collection of default rules that municipalities and service providers can contract around. The provision would have been completely unenforceable had TCG agreed to it, but it was improper for White Plains to even propose it.

*TCG New York*, 305 F.3d at 82.

To summarize, the Court invalidates as contrary to § 253(a) and not saved by § 253(c) the following provisions of the Draft Franchise: Sections C(2), D(2), D(3)(c), D(4)(b), H, I(8) and I(14)(c).

#### b. Fee Provisions in Local Law No. 13 and the Draft Franchise

■ In order for a fee provision to be "saved" by § 253(c), it must (a) be applied "on a competitively neutral and nondiscriminatory basis" and (b) constitute "fair and reasonable compensation." 47 U.S.C. § 253(a).

The Second Circuit's decision in *TCG New York* has firmly established the law with respect to the issue of whether a fee provision is applied "on a competitively neutral and nondiscriminatory basis." In TCG New York, White Plains did not require the incumbent provider, Verizon, to comply with the terms of the White Plains Ordinance, to enter into a franchise agreement or to pay the gross revenue fees that were imposed on other providers. *See TCG New York*, 305 F.3d at 73. White Plains argued that this differential treatment was, however, "competitively neutral and nondiscriminatory" because of the long history of services Verizon provided and, further, because Verizon provided certain in-kind compensation to the City

such as free conduit space. *See id.* at 79. The Second Circuit held that such disparate treatment was "plainly not 'competitively neutral and nondiscriminatory.'" *Id.* The court's decision was based on the future projected costs to both companies. The court noted that while TCG would be required to pay 5% of its gross revenues for the foreseeable future, Verizon would have to pay nothing. *See id.* Moreover, Verizon would have the option of either undercutting its prices or improving its profit margin, thereby strengthening its competitive position. Thus, the court held that the City's disparate treatment of the two companies did not fall within the safe harbor of § 253(c). *See id.* at 80–81.

■ In the present case, although Local Law No. 13 does not discriminate on its face and arguably applies to all providers within the Town, the facts establish that, in application, the Town is not demanding the franchise fee equally from all providers. Similarly, while all providers must arguably accept the Draft Franchise, the Town admits that Verizon has not yet entered into any franchise agreement or abided by the Town's compensation requirements. The relevant facts, as gathered from the parties' interrogatories, statements of material facts and memoranda of law, are as follows.

The incumbent telephone service provider in the Town is Verizon. Verizon has provided service in the Town since prior to 1998. The Town contends that Verizon is subject to Local Law No. 13 and was notified of this in the same manner as was TC Systems, via letter. However, to date, despite lengthy discussions and negotiations, although Verizon continues to provide services within the Town, Verizon has not complied with the terms of Local Law No. 13 or entered into a franchise agree-

ment. Although the Town contends that it has sought to enforce Local Law No 13 against Verizon in the same manner as it does all other providers, the facts prove otherwise. To begin with, Verizon has continued to operate and maintain its facilities in the Town's rights-of-way without a franchise agreement and without complying with any of the material terms of Local Law No. 13. *See* Defendant's Response to Plaintiffs' Statement of Material Facts at ¶¶ 51–61. Moreover, the Town continues to issue Verizon new permits despite the fact that Verizon does not have the required franchise. *See id.*

Presently, the Town contends that it is "considering its options" as discussions with Verizon appear to have reached an impasse. However, Local Law No. 13 was promulgated and adopted in 1999. As of today, four years later, the Town has not required Verizon to comply with the terms of Local Law No.13 and has not required Verizon to enter into a franchise agreement. Moreover, Verizon continues to operate with the Town's encouragement, despite noncompliance with Local Law No. 13 and the nonpayment of any franchise fees, while Plaintiffs have been faced with numerous obstacles and requirements as a precondition to providing services within the Town. This disparate treatment is plainly not "competitively neutral and nondiscriminatory." As the Second Circuit noted, "a municipality may not ... impose a host of ... provisions on one service provider without placing any on another." *TCG New York,* 305 F.3d at 80.

Accordingly, the Court holds that the five-percent gross revenue fee provisions in § 173–13 of Local Law No. 13 and the compensation provisions in section F of the Draft Franchise are not saved by § 253(c).[13] Further, the Court's invalida-

---

**13.** In light of this holding, it is not necessary

for the Court to reach the issue of whether

tion of the fee renders moot all provisions intended to ensure payment of that fee, most notably § 173–11(B)(2) of Local Law No. 13, which requires that financial reports be filed annually with the Town "[i]n order to determine the gross revenues received by the franchisee for compensation purposes." [14]

### D. Severability

Whether the invalid portions of Local Law No. 13 can be severed from its valid portions is a question of state law. *See Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). Pursuant to New York law, " 'a court should refrain from invalidating an entire statute when only portions of it are objectionable.' " *Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock*, 93 F.3d 68, 72 (2d Cir.1996) (quotation omitted). Moreover, " 'the preference for severance is particularly strong when the law contains a severability clause.' " *Id.* (quotation omitted).

In *TCG New York*, the district court held that "[g]iven the presence of the severability provision in the Ordinance ... [and] the New York standard of severability, this Court declines to invalidate the entire Ordinance, but rather just the portions of the statute it finds invalid." *TCG New York*, 125 F.Supp.2d at 91. Additionally, although the Second Circuit did not address the severability issue, it invalidated only specific enumerated subsections of the Ordinance at issue, rather than invalidating the entire Ordinance. *See TCG New York*, 305 F.3d at 82.

In the present case, given that Local Law No. 13 and the Draft Franchise con-

tain severability provisions and New York's position on severability, the Court invalidates only those provisions of Local Law No. 13 and the Draft Franchise that it finds are preempted and leaves the remainder of Local Law No. 13 and the Draft Franchise intact. *See TCG New York*, 305 F.3d at 82 (invalidating almost identical provisions of a local ordinance and leaving the remainder intact).

### E. Preemption by state law

Plaintiffs argue that Local Law No. 13 and the Draft Franchise also violate New York State law. Specifically, Plaintiffs contend that the Town's regulations are preempted by (1) Section 27 of New York Transportation Corporations Law ("Section 27") and (2) Section 94 of New York Public Service Law.

#### 1. Section 27

Plaintiffs contend that Local Law No. 13 and the Draft Franchise violate Section 27, which authorizes them to place equipment in the Town's rights-of-way.

However, although Section 27 gives telegraph and telephone corporations broad powers to construct their lines and fixtures over or under public highways, this section requires that telephone corporations **must** first obtain the **permission** of city, village or town authorities to use local streets for the construction of their lines. *See* N.Y. Transp. Corp. Law § 27.

The consent of the local government to use its streets has a long legislative history. *See People's Cable Corp. v. City of Rochester*, 70 Misc.2d 763, 767, 334 N.Y.S.2d 972 (Sup.Ct. Monroe County

---

"reasonable compensation" can include a 5% gross revenue fee.

**14.** Plaintiffs' First Amendment claim challenging section F(2) of the Draft Franchise,

which prohibits a franchisee from listing the franchise fee on its customer bills, is similarly rendered moot by the invalidation of the fee itself.

1972). The courts have recognized that this permission constitutes a franchise which must be granted at the local level. *See id.* " 'The legal effect of the consent, therefore, is the same as if the local authorities in form granted the franchise and the interest in the land.' " *Id.* at 768, 334 N.Y.S.2d 972 (quotation omitted). In effect, the right granted under Section 27 is the right to exist as a corporation, while the privilege of using public streets is a right that must be granted at the local level. *See id.* at 767, 334 N.Y.S.2d 972.

The case law in New York clearly provides support for ordinances and local laws that regulate the use of local rights-of-way. In *Village of Carthage v. Cent. New York Tel. & Tel. Co.*, the court held that "village authorities ... are **permitted to regulate** the erection of [the poles]; that is to say, the location of the poles and the streets to be occupied **are, doubtless, within the reasonable power of the village to regulate.**" *Village of Carthage v. Cent. New York Tel. & Tel. Co.*, 185 N.Y. 448, 452, 78 N.E. 165 (1906) (emphasis added). Similarly, the court in *Harper v. City of Kingston* sustained a local ordinance on the grounds that it was "a valid exercise of power under section 27 of the Transportation Corporations Law." *Harper v. City of Kingston*, 17 Misc.2d 627, 631, 188 N.Y.S.2d 577 (Sup.Ct. Albany County 1959). Most recently, in *TCG New York, Inc.*, the district court found that the White Plains Ordinance, did not violate Section 27. *See TCG New York, Inc.*, 125 F.Supp.2d at 100.

In *TCG New York* the court rejected the plaintiff's argument that the ordinance in question exceeded the local government's authority under Section 27. The court noted that "state courts have held that local governments may, consistent with

their charters, require franchises." *Id.* (citations omitted).[15] This Court is in agreement with the analysis and conclusion of the district court in *TCG New York*. The Town's franchise requirement is consistent with the Town's right to approve or deny permission pursuant to Section 27. The granting of a franchise is simply the "permission" provided for by Section 27. Thus, to the extent that Local Law No. 13 is permissible under federal law, it is consistent with Section 27 as well. Accordingly, the Court denies Plaintiffs' motion for summary judgment and grants Defendant's motion for summary judgment with respect to this claim.

## 2. The New York Public Service Law

Plaintiffs argue that Section 94 of the New York Public Service Law limits the Town's authority by granting the New York Public Service Commission ("PSC") exclusive jurisdiction over the regulation of telecommunications services and providers. Plaintiffs argue that because they have obtained a certificate of public convenience and necessity from the PSC, the PSC has already reviewed and analyzed their legal, financial, and technical ability to construct and operate telephone and telecommunications facilities in the State. Accordingly, they argue that certain sections of Local Law No. 13 and the Draft Franchise are duplicative of, or in conflict with, the PSC's jurisdiction and, therefore, should be preempted.

Section 94 of the New York Public Service Law provides the "[g]eneral powers and duties of [the] commission in respect to telegraph corporations and telephone corporations." N.Y. Pub. Serv. Law § 94. Such duties and powers include the "general supervision of all ... telephone corpo-

---

**15.** Although the Second Circuit later reversed some of the district court's holding, the Second Circuit left intact the district court's state law analysis.

rations and telegraph lines and telephone lines within its jurisdiction ... and shall have power to and shall examine the same and keep informed as to their general condition, their capitalization, their franchises and the manner in which their lines and property are ... operated or managed[.]" *Id.* at § 94(2).

The PSC has "general" supervisory power and its basic duties include: reviewing and investigating complaints about the service of utilities, the conduct of utilities, tariff-based charges imposed by utilities, as well as a general oversight of the industry. *See New York Tel. Co. v. Pub. Serv. Comm'n,* 179 Misc.2d 301, 308–09, 684 N.Y.S.2d 829 (Sup.Ct. Albany County 1998) (citation omitted). With "regard to telephone companies the ultimate objective of the Commission is to insure proper and adequate service at reasonable cost to the public." *New York Tel. Co. v. Pub. Serv. Comm'n,* 88 Misc.2d 21, 24, 387 N.Y.S.2d 524 (Sup.Ct. Albany County 1976) (citation omitted). With this background in mind, the Court turns to Plaintiffs' arguments.

Several of the provisions of Local Law No. 13 and the Draft Franchise which Plaintiffs challenge have already been invalidated on other grounds. *See* III *supra.* As to the remaining provisions, there is nothing in the statute, the legislative history or the case law to support Plaintiffs' contention that these provisions are duplicative of, or in conflict with, the PSC's jurisdiction. Moreover, Plaintiffs have not cited any cases in support of their argument. There is no suggestion in the case law or the legislative history that the "general" supervisory authority bestowed on the PSC was in any way meant to preempt or supercede the rights of local municipalities with respect to the use of their rights-of-way. The case law indicates that the role of the PSC with respect to telephone companies is, as noted, essentially to "in-

sure proper and adequate service at reasonable cost to the public." *New York Tel. Co.,* 88 Misc.2d at 24, 387 N.Y.S.2d 524 (citation omitted). The PSC is not charged with protecting the Town's interest in its rights-of-way, nor is it responsible for regulating the use or misuse of such rights-of-way.

The district court's holding in *TCG New York* provides further guidance for dismissing this claim. In TCG New York, the district court, faced with the exact same argument, held that the relevant provisions of the White Plains Ordinance did not implicate § 94 of the New York Public Service Law in the manner that the plaintiffs asserted and, therefore, the court dismissed the claim. *See TCG New York,* 125 F.Supp.2d at 101.

Accordingly, the Court denies Plaintiffs' motion for summary judgment and grants Defendant's motion for summary judgment with respect to this claim.

**F. The Fourteenth Amendment**

Plaintiffs argue that the Town has violated their due process rights under the Fourteenth Amendment by taking, without compensation, their rights to the Town's rights-of-way, as guaranteed by Section 27.

The district court in *TCG New York* was presented with the exact same claim. The court dismissed the claim holding that the City of White Plains was not in violation of the Fourteenth Amendment. The court reasoned that "the City has not 'taken' property ... that was granted under § 27 of the N.Y. Transportation Corporations Law, but, instead, has exercised its right to approve or deny permission as granted by that statute." *TCG New York,* 125 F.Supp.2d at 101. Thus, as "[t]he City was simply exercising its regulatory powers in requiring TCG to agree to a franchise" it was clearly not in violation of the

Fourteenth Amendment. *Id.* (citations omitted).

Several other cases have similarly held that the rights granted under Section 27 are not property rights and, thus, a Town's denial of a franchise does not constitute deprivation of property under the Fourteenth Amendment. *See, e.g., New York Tel. Co. v. Town of North Hempstead,* 41 N.Y.2d 691, 699–700, 395 N.Y.S.2d 143, 363 N.E.2d 694 (1977) (the right bestowed under Section 27 is not a property interest but merely a "license or privilege"); *New York Tel. Co. v. Comm'r of New York State Dep't of Transp.,* 62 Misc.2d 6, 9, 307 N.Y.S.2d 945 (Sup.Ct. Albany County 1970).

In the present case, the Town has not taken any property from Plaintiffs but, rather, has simply exercised its right to approve or deny permission pursuant to Section 27. Moreover, Section 27 does not provide Plaintiffs with a property interest in the Town's rights-of-way and, therefore, they have no claim for the "taking" of such property.

Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiffs' Fourteenth Amendment claim and dismisses Plaintiffs' tenth cause of action.

### G. Defendant's Counterclaims

In its counterclaims, Defendant asserts that Plaintiffs are using and occupying the Town's public rights-of-way to provide telecommunications services within the Town without having obtained authorization. Based on this, Defendant asserts two claims: (1) under Local Law No. 13 and (2) under Section 27. The Court will address Defendant's counterclaims in sequence.

### 1. Section 173–3(B) of Local Law No. 13

 Section 173–3(B) provides that "[n]o person shall **use** or **occupy the rights-of-way as a telecommunications provider,** nor shall they install, construct, operate, or maintain equipment in the rights-of-way **to provide telecommunications services to customers** ... nor shall they **offer** telecommunications **services** ... **without a franchise and/or license granted by the town.**" *See* Local Law No. 13, § 173–3(B) (emphasis added). Although the Court has invalidated a number of subsections of Local Law No. 13, the essence of the Local Law remains—if a telecommunications provider wishes to provide services in the Town or occupy its rights-of-way in any of the above ways, it must first obtain a franchise from the Town. If it proceeds without this franchise, it is in violation of Local Law No. 13.

In the present case, the undisputed facts establish that Plaintiffs have violated Local Law No. 13. TC Systems admits that it (1) owns a fiber network within the Town's boundaries that is placed in a conduit which is located on the public rights-of-way, (2) has begun some form of network construction within the Town, and (3) currently provides telecommunications services to at least one customer within the Town. *See* Transcript of Deposition of Anthony Giovannucci, dated October 24, 2001 ("Giovannucci Tr."), at 17–19; Transcript of Deposition of Harold Fenner, dated October 4, 2001 ("Fenner Tr."), at 18; Plaintiff TC Systems' Response and Objections to Defendant's Request for Admissions at ¶ 19. Similarly, TC New York admits that it currently provides telecommunications services to customers located in the Town through use of fiber optic lines owned by other companies within the Town's rights-of-way. *See* Plaintiff TC New York's Response to Defendant's First Set of Inter-

rogatories at ¶ 3. Thus, Plaintiffs admit to using Town property, in some form or another, to provide telecommunications services.

Plaintiffs, however, argue that since their fibers do not directly physically occupy the rights-of-way, they are not "using" the Town's rights-of-way to provide services to their customers within the Town. This argument is untenable. Regardless of whether they use the rights-of-way directly (by laying wires in the rights-of-way) or indirectly (by either laying wires in a conduit owned by another provider or by delivering services over facilities that another provider has installed in the rights-of-way), they are still using the rights-of-way.

Accordingly, the Court grants the Town's motion for summary judgment on its counterclaim alleging a violation of Local Law No. 13.[16]

### 2. Section 27

Section 27 definitively provides, in relevant part, "[a]ny [telegraph or telephone] corporation is authorized ... to construct and lay lines of electrical conductors under ground in any ... town within the limits of this state ... **provided** that such [telegraph or telephone] corporation shall, **before laying any such line in any ... town ... first obtain** from the common

council of cities, or other body having like jurisdiction therein, the trustees of villages, or the town superintendents of towns, permission to use the streets within such city, village or town ...." N.Y. Transp. Corp. Law § 27 (emphasis added).

Defendant alleges that Plaintiffs laid lines within the Town's streets in order to provide telecommunications services to customers, without its "permission," in violation of Section 27. In opposition, Plaintiffs contend that (1) Section 27 does not create a right of action by the Town and (2) they have not "laid" lines within the Town's rights-of-way without "permission."[17] The Court will address each of these arguments in turn.

■ On its face, the language of Section 27 does not expressly provide a remedy for a violation thereof. See N.Y. Transp. Corp. Law § 27. Thus, in order to decide whether the statute impliedly creates a private right of action,[18] New York considers the following factors: (1) is the plaintiff part of the class for whose benefit the statute was enacted; (2) is there any indication of legislative intent either to create or deny such a remedy; and (3) is such a remedy consistent with the underlying purposes of the legislative scheme.[19] See Burns Jackson Miller

---

16. Defendant's claim regarding Plaintiffs' failure to pay the Town's franchisee fee is rendered moot by the invalidation of the fee.

17. Plaintiffs also argue that "the requirements the Town seeks to enforce in its Counterclaims are unlawful under Section 253 and New York state law." See Plaintiffs' Memorandum of Law at 35. The Court has already addressed this argument, at length, above.

18. An action by a municipal entity such as a town or a county is treated as a private right of action for the purposes of this analysis. See, e.g., County of Broome v. State, 119 A.D.2d 358, 360–61, 507 N.Y.S.2d 320 (3d

Dep't 1986) (applying the Cort factors to determine whether the plaintiff county had a private right of action under a New York State statute).

19. In determining whether to infer a private cause of action from a federal statute, the intent of Congress remains the ultimate issue and unless " 'congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.' " Thompson v. Thompson, 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (quotation omitted).

*Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 325, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983); *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

 Although the legislative history of Section 27 and the statute itself are silent as to whether the statute creates a right of action for a municipality, it is clear that Section 27 intends to bestow some authority on the Town with respect to the use of its streets. Section 27 provides that the Town's permission is a prerequisite to the rights bestowed on a corporation. Clearly, this provision was intended for the Town's benefit, and it would be meaningless if there were no mechanism by which the Town could enforce it. Thus, the Court finds that Section 27 does create a right of action for the Town where a telecommunications provider proceeds without the "permission" required by the statute.

 The Court must now determine whether Plaintiffs have proceeded to "lay lines" in the Town, without the Town's "permission," in violation of Section 27. The cases defining the term "permission," as used in the statute, are far from uniform. However, Section 27 clearly requires some form of "permission" and, thus, as Plaintiffs have conceded that they did not obtain such permission, if they have installed lines underground in the Town, they are in violation of Section 27.[20]

Although the Town contends that Plaintiff TC Systems has installed telecommunications facilities in the Town's rights-of-way, Plaintiffs deny that this is the case. Plaintiffs contend that although "some of TCG's facilities have been constructed within the Town," the construction was not within the Town's rights-of-way. *See* Plaintiffs' Response Statement of Material Facts at ¶ 53. The undisputed facts establish that (1) TCG had plans to construct its telecommunications facilities in the Town of Colonie as early as 1997, *see* Affidavit of Anthony Giovannucci, sworn to October 29, 2002 ("Giovannucci Aff."), at ¶ 10, (2) in the beginning of 2001, Key Bank decided to purchase service from TCG which would require TCG to utilize the Town's rights-of-way, *see* Giovannuci Tr. at 108–110, (3) TCG began construction in the Town around this time, although the parties dispute the nature of the construction, *see id.* at 110–12; Plaintiffs' Response Statement of Material Facts at ¶ 53, (4) TC Systems **owns a fiber network within the Town's rights-of-way** which is placed **in conduit (owned by Verizon),** which is **located in the public rights-of-way,** *see* Confidential Portion of Plaintiffs' Response Statement of Material Facts at 18–20, and (5) TC Systems is currently providing telephone service to at least one customer in the Town. *See* TC Systems' Response and Objections to Defendant's Request for Admissions at ¶ 19.

Notwithstanding these facts, however, there is a missing link—how did the fiber, which TC Systems owns and uses, get into the conduit? The facts surrounding whether TC Systems installed it there are disputed and, therefore, the Court cannot say, as a matter of law, that Plaintiffs have violated Section 27.

Accordingly, the Court denies Plaintiffs' and Defendant's motion for summary judgment with respect to this counterclaim.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein, the Court hereby

---

**20.** Unlike Local Law No. 13, Section 27 does not address "usage" of the Town's rights-of-way but, rather, prohibits a provider from "laying" lines in the rights-of-way without the Town's permission. Thus, for the Town to succeed on its counterclaim it must show that it is undisputed that Plaintiffs have installed lines in its rights-of-way.

ORDERS that Plaintiffs' Third, Fourth and Fifth causes of action are **DISMISSED** as moot; and the Court further

ORDERS that Sections 173–6(C)(2), 173–7(A), 173–7(A)(1), 173–7(A)(5), 173–7(A)(6), and 173–10(B) of Local Law No. 13 are invalidated; and the Court further

ORDERS that Sections C(2), D(2), D(3)(c), D(4)(b), H, I(8) and I(14)(c) of the Draft Franchise are invalidated; and the Court further

ORDERS that the 5% gross revenue fee provisions in § 173–13 of Local Law No. 13 and the compensation provisions in Section F of the Draft Franchise are invalidated; and the Court further

ORDERS that all provisions intended to ensure payment of these fees, including but not limited to § 173–11(B)(2) of Local Law No. 13, are invalid as moot; and the Court further

ORDERS that Defendant's motion for summary judgment is **GRANTED** and Plaintiffs' motion for summary judgment is **DENIED** with respect to Plaintiffs' claim that Local Law No. 13 and the Draft Franchise violate Section 27, to the extent they are permissible under federal law; and the Court further

ORDERS that Defendant's motion for summary judgment is **GRANTED** and Plaintiffs' motion for summary judgment is **DENIED** with respect to Plaintiffs' claim that Local Law No. 13 and the Draft Franchise violate New York Public Service Law § 94; and the Court further

ORDERS that Defendant's motion for summary judgment is **GRANTED** and Plaintiffs' motion for summary judgment is **DENIED** with respect to Plaintiffs' tenth cause of action, asserting that the Town violated their Fourteenth Amendment rights; and the Court further

ORDERS that Defendant's motion for summary judgment is **GRANTED,** and Plaintiffs' cross-motion for summary judgment is **DENIED** with respect to the Town's counterclaim that Plaintiffs have violated Local Law No. 13; and the Court further

ORDERS that Defendant's motion for summary judgment and Plaintiffs' cross-motion for summary judgment are **DENIED** with respect to the Town's counterclaim that Plaintiffs have violated Section 27; and the Court further

ORDERS that Plaintiffs' counsel is to initiate a telephone conference [21] with the Court and opposing counsel at 9:00 AM on May 29, 2003 to discuss how to proceed with the only remaining claim in this action—the Town's counterclaim that Plaintiffs have violated Section 27.

**IT IS SO ORDERED.**

21. The Court requests that the conference call be arranged through a major telecommunications provider, or equivalent.